THE BOARD OF CHOSEN FREEHOLDERS OF HUDSON COUNTY v. JOHN C. KAISER.

Submitted March 23, 1907—Decided March 2, 1908.

1. The annual salary provided by chapter 6 of the laws of 1905 furnishes the only compensation to which the sheriff of a county of the first class is entitled as keeper of the common jail.

2. Moneys received by such sheriff out of the county treasury for the policing of the jail and the victualing of prisoners, and for the care and comfort of detained witnesses, and moneys received by him from the general government for the care and victualing of federal prisoners, in excess of what is actually expended by him for those purposes, must be turned over by him to the county authorities, and an action will lie against him by the county for the recovery of such excess.

On demurrer to declaration.

Before GUMMERE, CHIEF JUSTICE, and Justice REED.

For the demurrant, *Marshall W. Van Winkle* and *Maximilian T. Rosenberg.*

For the plaintiff, *John Griffin.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.   The declaration contains four counts.   The averments of the first count are that the defendant is the sheriff of Hudson county, and that he is, by virtue of his office, the keeper of the common jail of that county; that, as such keeper, he has received, each month during his term of office, stated sums of money out of the county treasury for the maintenance of the jail and the victualing of the prisoners confined therein; that the sums so received by him have exceeded each month the cost of maintaining the jail and feeding the prisoners by about $1,500; that such excess is the property of the county, and not of the defendant, and that it is the duty of the latter to return it into the county treasury; that demand has been made upon him by the plaintiff for the return of these moneys, and that he has refused to comply with such demand.   The second count is similar to the first, except that the moneys sought to be recovered were paid to the sheriff by the county to enable him to make comfortable provision for persons committed to the county jail for the purpose of insuring their attendance as witnesses upon the trial of criminal cases.   The third count seeks to recover fees paid to the sheriff by the federal government for the custody and victualing of persons confined in the jail, either as prisoners or witnesses, by a warrant or commitment of a United States court.   The fourth count is an omnibus one, embracing in general averments, the specific causes of action set out in those which precede it.   The defendant demurs to the several counts of the declaration, and the principal question raised by his specification of causes is to what extent, if at all, his right to special compensation as keeper of the common jail of the county is affected by chapter 6 of the laws of 1905, entitled "An act respecting sheriffs in counties of the first class in this state, and providing salaries for such officers, and respecting the fees and duties of such sheriffs."   *Pamph. L.* 1905, *p.* 18.

The first section of the act referred to provides that "the fees, costs, allowances, percentages, and all other perquisites and emoluments of whatever kind, which by law the sheriffs

in counties of the first class in this state may receive for any official acts or services rendered by such sheriffs, or by any deputies, assistants, or other person in their office or employ-ment, for any acts done or services rendered in connection with said office of sheriff  *  *  *  shall be accounted for by said sheriffs and paid over as such in manner hereinafter provided." The second section provides that "the said sheriffs shall respectively,  *  *  *  on or before the fifteenth day of each month, make a full and itemized statement, and return, verified by oath, to the county collectors of their several coun-ties, of the fees, costs, allowances, percentages and perquisites of whatever kind received by them, or by any assistant or other person in their employment, for any acts done or ser-vices rendered in connection with said offices;  *  *  *  and on or before the twentieth day of each month the said sheriffs shall respectively pay over the amount of such fees and moneys to the county collectors of their respective counties." The fourth section provides that "the said sheriffs in counties of the first class of this state shall be paid an annual salary of ten thousand dollars each, to be paid by the county collectors of their respective counties, in equal monthly payments, in full compensation for all services rendered by said sheriffs in lieu of all fees and other compensation whatever heretofore provided or allowed by law." The seventh section provides that "nothing in this act contained shall be held to abrogate, diminish or impair the duties or liabilities of any such sheriff, but he shall be and remain subject to all the duties, responsi-bilities and liabilities heretofore devolving upon him by law."

The declaration of the statute is explicit and easily under-stood. The salary provided by the fourth section is in lieu of all *fees and other compensation whatever* theretofore provided or allowed by law for services rendered by the sheriff, and such fees and other compensation are, by the first and second sections of the act, thereafter to be received by the sheriff for the use of the county and paid over by him to the county col-lector. The custodianship of the common jail of his county is vested in the sheriff *virtute officii.* The duties performed and services rendered by him with relation thereto are per-

formed and rendered as sheriff. *Virtue* v. *Freeholders of Essex*, 38 *Vroom* 139. After the act of 1905 went into effect, therefore, the sheriff of Hudson county ceased to be entitled to any of the fees or compensation provided by earlier laws for services rendered by him as keeper of the county jail. Does the surplus remaining in his hands of the moneys paid to him out of the county treasury for the purpose of victualing prisoners confined in the jail, and policing that institution, a recovery of which is sought by the first count of the declaration, come within the description "fees or compensation?" It seems to us that the question is free from doubt. Prior to the enactment of the statute of 1905 the sheriff of each county of the state was entitled to a per diem fee of ten cents "for victualing a prisoner" ("An act to regulate fees," *Gen. Stat., p.* 1446), unless such fee was increased or diminished by the board of freeholders under authority conferred upon them for that purpose by "An act concerning county jails." *Pamph. L.* 1876, *p.* 230. So much of these fees as were not required to be expended in furnishing food to the prisoners belonged to the sheriff, and constituted a part of his compensation as jailkeeper. The same situation existed with relation to the moneys paid to him for the policing of the jail. What remained of it after paying the salaries of his deputy keepers went to make up his compensation for services rendered by him as custodian of the jail. The salary provided by the act of 1905 is in lieu of such compensation, and the county is therefore entitled to have returned to it all moneys advanced by it to the sheriff for the purpose of enabling him to feed his prisoners and pay his deputies which have not been expended by him for that purpose.

The right of the county to recover from the sheriff the surplus remaining in his hands of moneys paid to him by the county for the purpose of providing for the care and comfort of detained witnesses seems equally clear. The only legislative enactment which deals with this matter is section 30 of the Criminal Procedure act (*Rev.* 1898, *p.* 877), which makes it the duty of the board of chosen freeholders of each county to take care that persons detained in custody as wit-

nesses shall be comfortably lodged and provided for, and no further restricted of their liberty than is necessary for such detention. This court had occasion, in the case of *Watkins* v. *Freeholders of Atlantic,* 44 *Vroom* 213, to consider the scope of the duty which this provision imposed upon boards of freeholders, and concluded that by it they were required to exercise a governmental supervision of the jail for the purpose of seeing that such persons were comfortably lodged and provided for, and to see to it that the necessary moneys were provided to furnish for them accommodations of the prescribed kind, but that they were not in any sense constituted the custodians of such detained witnesses. The inference to be drawn from the latter part of the statement of the court is, of course, that these witnesses are in the custody of the sheriff as the keeper of the jail. That being the situation, therefore—the sheriff being the custodian of detained witnesses, and the duty of furnishing the necessary moneys to comfortably lodge and provide for them resting upon the board of freeholders—moneys paid by the board to the sheriff for that purpose are either received by him as their agent, to be used solely for the purpose of performing the statutory duty imposed upon the board, or else they are received by him partly for that purpose and partly as compensation for his own services in comfortably lodging and providing for detained witnesses. If the first theory be accepted, and the sheriff is considered not to be entitled to any remuneration for services rendered to, or duties performed with relation to, such persons, then clearly any unexpended surplus which remains in his hands of moneys received by him on this account belongs to the county, and he is under the legal, as well as moral, obligation to return it. If, on the other hand, the second theory be accepted as sound, and the surplus which remains in his hands, after making the expenditures required for the comfort and care of these witnesses, is compensation for the duties performed and the services rendered by him as their custodian, then the salary provided by the act of 1905 is in lieu of such compensation, and such unexpended balance must be returned by him into the county treasury.

It is argued on behalf of the defendant that even if the moneys received by him from the county, in excess of his expenditures in the maintenance of the jail and the feeding of the prisoners, were paid to him without warrant of law, they cannot now be recovered, for the reason that they were voluntarily paid by the county with full knowledge of the facts and without fraud on either side. But the rule which prevails as to private parties, with relation to voluntary payments made under the conditions stated, does not apply in a case of this kind. This matter was directly before the Court of Errors and Appeals in the case of *Camden* v. *Varney,* 34 *Vroom* 325, and it was there decided that "money paid for a municipal corporation to one of its officers in excess of his lawful fees may be recovered by the corporation in an action against the officer for money had and received to its use, although the payments were made on the order of its governing body with full knowledge of the fact and without fraud. The defence of voluntary payment is not available in such a case."

The demurrers to the first and second counts must be overruled.

We now take up the consideration of the demurrer to the third count of the declaration. In addition to the grounds already considered, it is contended that in caring for and feeding federal prisoners and witnesses the sheriff is the agent of the United States marshal, and that therefore what is paid to him on that account is not received by him as sheriff. It is enough to say, in answer to this contention, that the county jail is not furnished to the sheriff to conduct a private business in, and that if his only authority to receive federal prisoners within its walls was a private bargain made with the United States marshal, his conduct would be a clear violation of official duty. But such is not the case. Section 33 of the act concerning sheriffs (*Gen. Stat., p.* 3117) makes it the duty of the sheriff of every county to receive all persons committed to his custody by the authority of the United States. He takes them into his custody as sheriff; he remains responsible for them as sheriff, and all moneys paid to him

on their account are paid to him as, and received by him as, sheriff. That being so, moneys paid to him by the federal government in excess of what was needed for the food and care of federal prisoners was paid to him as compensation for services rendered and duties performed with relation to them as sheriff, and the salary provided by the act of 1905 is in lieu of such compensation. The demurrer to the third count must be overruled.

The fourth count, as has already been stated, embraces by general averments the several causes of action set out in the counts which precede it. For the reasons stated in dealing with the demurrer to those counts, the demurrer to this count must be also overruled.

Before leaving the case it may be stated that we have not overlooked the contention of counsel for defendant that the construction that we have given to the act of 1905 is unsound, for the reason that it will compel the sheriff to pay for the food supplied to the inmates of the jail, and for the expenses of maintaining it, out of his own pocket, and that no such intention on the part of the legislature can be gathered from the act. No such result, however, follows. So far as the money paid by the United States government for the feeding and care of federal prisoners is concerned, the reception of it by the county carries with it the burden of expending so much of it as may be necessary for the feeding, care and guarding of those prisoners. The act of 1905, by necessary implication, relieves the sheriff of this burden and imposes it upon the county. So, too, with regard to the feeding of prisoners and witnesses confined in the jail on warrants issued by state authority, and the policing of that institution, the cost thereof rests upon the county. In this regard, however, no change has been made by the act of 1905. The jail is a county institution, and the burden of its maintenance has always rested upon the county. The funds necessary therefor, including the cost of food supplied to its inmates, have always been paid out of the county treasury. Under the system that prevailed prior to the passage of the act of 1905 the sheriff received a lump sum from the county, out of which to pay the

expenses of maintaining the jail, and to reimburse himself for his services as its custodian.    Under the system created by the act of 1905 he ceases to be the disbursing officer of the county in discharging its obligations incurred in the maintenance of the jail, and that duty is transferred to the financial officers of the county who are charged with the duty of paying its other current obligations.    This may, perhaps (although we do not decide it, for the question is not before us), be done by following the course which has given rise to this litigation, namely, making these payments through the sheriff, and·depositing in his hands, before the time when they are required to be made, sufficient funds with which to meet them, receiving from him an account of his disbursements and the return of unexpended balances.    But by whatever system the payments are made, the sole obligation to make them rests upon the county.

The plaintiffs are entitled to judgment on the demurrer.