Ex parte SHORES, Sheriff.

(District Court, N. D. Iowa, E. D.    April 23, 1912.)

No. 4,146.

1. PRISONS (§ 2*)—USE BY THE UNITED STATES OF STATE PRISONS OR COUNTY JAILS.

The several states may refuse to allow the use of their jails and prisons for the commitment of persons convicted in federal courts, and, where they do so, the United States may not lawfully commit persons to such jails.

[Ed. Note.—For other cases, see Prisons, Cent. Dig. § 3; Dec. Dig. § 2.*]

2. PRISONS (§ 2*)—USE BY THE UNITED STATES OF STATE PRISONS OR COUNTY JAILS.

Under Resolution Cong. Sept. 23, 1789, 1 Stat. 96, and Rev. St. §§ 5536–5538 (U. S. Comp. St. 1901, p. 3719), requesting the states to adopt laws requiring the keepers of their jails to receive therein federal prisoners, and providing for the care of federal prisoners, and Code Iowa 1897, §§ 5637, 5676, providing that county jails shall be used as prisons for the commitment of federal prisoners, the county jails in Iowa are jails of the United States for the commitment of federal prisoners, and, though the sheriffs as keepers of such jails are not officers of the United States, they are keepers for the United States of federal prisoners committed to such jails, and are subject to punishment for contempt for disobedience of orders of commitment.

[Ed. Note.—For other cases, see Prisons, Cent. Dig. § 3; Dec. Dig. § 2.*]

3. ESCAPE (§ 3*)—OFFENSES—PERSONS LIABLE.

At common law, it was a misdemeanor for a sheriff having lawful charge of a prisoner to voluntarily or negligently permit him to depart from his custody, however short a time the departure might be.

[Ed. Note.—For other cases, see Escape, Cent. Dig. §§ 2, 4; Dec. Dig. § 3.*]

4. ESCAPE (§ 3*)—OFFENSES—PERSONS LIABLE.

A sheriff in charge of a county jail in Iowa who permits a federal prisoner legally sentenced to the jail to go at large from time to time violates Rev. St. § 5409 (U. S. Comp. St. 1901, p. 3658), and Code Iowa 1897, § 4891 et seq., punishing escapes, an "escape" being defined to be the voluntarily or negligently permitting a person lawfully confined in jail

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to leave the prison where he is confined before he is entitled to be released therefrom.

[Ed. Note.—For other cases, see Escape, Cent. Dig. §§ 2, 4; Dec. Dig. § 3.*

For other definitions, see Words and Phrases, vol. 3, pp. 2460–2463.]

5. CONTEMPT (§ 20*)—DISOBEDIENCE OF ORDER OF COURT—LIABILITY.

A sheriff in charge of a county jail in Iowa who permits a federal prisoner legally sentenced to the jail to go at large from time to time is guilty of contempt of the federal court for disregarding the order of commitment.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 58–62; Dec. Dig. § 20.*]

Application to punish F. M. Shores, Sheriff of Blackhawk County, Iowa, for contempt of court. Defendant adjudged guilty of contempt.

F. F. Faville, U. S. Atty., for the United States.

REED, District Judge. The United States attorney has filed an application supported by affidavits for an order or rule upon F. M. Shores, as sheriff of Blackhawk county, this state, and keeper of the common jail of that county, to show cause why he should not be punished as for contempt in not detaining in said jail a prisoner convicted, sentenced, and committed thereto by this court for a violation of a law of the United States. The order or rule was granted, and a copy of the application with the accompanying affidavits served upon the sheriff, who will be called the defendant, and he has appeared in response thereto.

The application alleges that one W. W. Fritsche, of Waterloo, Blackhawk county, in this District, was convicted by this court upon his plea of guilty to an indictment which charged him with having sold liquor to an Indian of the Tama reservation, in violation of section 2139 of the Revised Statutes of the United States, as amended by Act Jan. 30, 1897, c. 109, 29 Stat. 506, and adjudged to pay a fine of $100 and costs, and be imprisoned in the county jail of Blackhawk county for 60 days, and until said fine and costs were paid. Under a warrant in the usual form the marshal delivered Fritsche to the defendant as keeper of said jail; and the latter was directed to receive and detain him therein during the term for which he was sentenced. After so receiving him the defendant, instead of confining him in jail as commanded by the warrant, voluntarily and purposely permitted him to go from the jail and return thereto at pleasure, so that he was not in fact imprisoned as required by the sentence and order of imprisonment. The defendant admits in open court that the facts alleged in the application, and shown by the affidavits, are substantially correct, and offers as an excuse for his conduct that he had been in office but a short time when the prisoner Fritsche was delivered to him, that his predecessor in office told him that he, the predecessor, was in the habit of treating United States prisoners committed to that jail in the same general way that Fritsche was treated by him, the defendant, and that other sheriffs and keepers of county jails in this district were in the habit of so treating such prisoners when committed to their custody. The United

States attorney admits that some .of the keepers of county, jails to whose custody United States prisoners have been committed pursuant to the sentence and order of this court have not in the past confined them in the jail, but have permitted them to go therefrom and return at pleasure, as the defendant admits that he did in this instance. He urges, however, that such conduct is a violation of law, and of the war-rant of commitment, and in contempt of the authority of this court and asks that it be so adjudged.

The questions presented require a determination of the right of the United States to the use of the several county jails in this state in which to imprison persons convicted and sentenced to imprisonment for violations of the laws of Congress, and the duties of the sheriffs as keepers of such jails in keeping prisoners committed to such jails by the United States courts. The United States do not maintain regular places in the several states in which to confine persons sentenced for other than penitentiary offenses, but use the state jails for that purpose; and, before they established penitentiaries of their own, used the state prisons for the confinement of prisoners convicted in the courts of the United States of penitentiary offenses.

[1] The several states may, no doubt, refuse to allow the use of their jails and prisons for such purpose; and, should they do so, the United States could not lawfully commit persons to such jails, and the jailers would not be required to receive them.

[2] But Congress at its first session, and on September 23, 1789, adopted a resolution requesting the Legislatures of the several states to pass laws, making it the duty of the keepers of their jails to receive and safely keep therein under the same penalties as in the case of state prisoners all prisoners committed under the authority of the United States until they shall be discharged by due course of the laws thereof, the United States, however, to pay for the keeping and support of such prisoners as they shall commit to such jails. 1 Stat. 96. On March 3, 1791, the Congress passed another resolution, which, after referring to the resolution of September 23, 1789, provides that, in case any state shall not comply with said request (the resolution of September 23, 1789), the marshal in such state may be authorized to hire a convenient place to serve as a temporary jail, and to make all necessary provision for the safe-keeping of prisoners committed under the authority of the United States, until permanent provision shall be made by law for that purpose. 1 Stat. 225. The last-named resolution is, in substance, carried into the resolution of March 3, 1821 (3 Stat. 646), and sections 5536–5538 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 3719).

Pursuant to the resolution of September 23, 1789, above, several of the states, among them the state of Iowa, authorized by statutes the use of their county jails and state prisons in which to imprison persons committed thereto by the courts of the United States for violations. of the laws of Congress. For the earlier of the Iowa statutes upon the question, see sections 3103, 3116, 3119, Code of Iowa 1851; and these sections are in substance carried into the Code of 1897 as sections 5637, 5651, and 5676. It is provided by these sections that the jails

in the several counties in this state shall be in charge of the respective sheriffs and used as prisons for the confinement of persons detained in or committed thereto by authority of the courts of the United States, as well as by those of this state, all charges and expenses, however, for the safe-keeping and maintenance of United States prisoners to be paid by the United States. Other sections of the Iowa Code provide that the sheriff shall by himself, or deputy, perform such duties as may be required of him by law, "and he shall receive all prisoners lawfully committed to his custody and keep them by himself, or by his deputy or jailer, until discharged by law"; and his failure to perform any such duty is not only an offense under the state law, but is a contempt of the court ordering the performance of such duty, for which he may be punished accordingly. Code 1897, §§ 499, 501.

The United States have, therefore, by the arrangement with the state of Iowa, the lawful right to the use of the jails of the several counties in this state in which to confine persons convicted of violating the laws of Congress; and it is the duty of the sheriffs of said counties as the keepers of such jails to receive and detain therein such prisoners until their terms of imprisonment expire, or they are otherwise discharged from the prison by authority of the United States. The said jails, therefore, may be deemed jails of the United States for this purpose, and the keepers thereof, though not strictly officers of the United States, are keepers for the United States of the prisoners committed to said jails by the courts of the United States, and are subject to punishment for contempt for disobedience or disregard of the warrants or orders committing such prisoners to their custody. Randolph v. Donaldson, 9 Cranch, 77–86, 3 L. Ed. 662; Servis v. Marsh (C. C.) 38 Fed. 794; In re Birdsong (D. C.) 39 Fed. 599, 4 L. R. A. 628; Riley v. Whittiker, 49 N. H. 145, 6 Am. Rep. 474; State v. Davis, 14 Nev. 439, 33 Am. Rep. 563.

[3] At common law it was a misdemeanor for a sheriff or jailer having lawful charge of a prisoner to voluntarily or negligently permit him to depart from his custody, no matter how short a time the departure might be. 4 Bl. Com. 129–130; Wharton's Cr. Law (9th Ed.) § 1667; Commonwealth v. Barker, 133 Mass. 399.

[4, 5] An escape is defined to be the voluntarily or negligently permitting a person lawfully confined in jail to leave the prison where he is confined before he is entitled by law to be released therefrom. Bouvier's Law Dictionary, title "Escape"; 3 Bl. Com. 415; Wharton's Cr. Law (9th Ed.) § 1667. Section 5409 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 3658) provides:

"Whenever any marshal, deputy marshal, ministerial officer, *or other person*, has in his custody any prisoner by virtue of process issued by any court of the United States, and such marshal, ministerial officer, *or other person*, voluntarily suffers such prisoner to escape, he shall be fined not more than two thousand dollars, or imprisoned for a term not more than two years, or both."

And section 4891 et seq. of the Iowa Code of 1897 provide that, if any sheriff or jailer shall voluntarily suffer or permit any person convicted of a public offense and committed to the jail of which he is

the keeper to escape therefrom, he is guilty of a felony and may be punished accordingly.

In cases where a person is committed to prison pursuant to his conviction of a prison offense, the jailer has no discretion (except in cases of emergencies) but to obey the warrant of commitment. He may not rightly consult his own convenience, nor that of the prisoner, and permit the latter to leave the jail and return thereto at pleasure. Persons are committed to jail for the purpose of imposing upon them the penalties they have incurred because of their violations of the law; and it is not for the jailer to remit any part of that punishment. If sickness or other circumstances should arise which make it proper to grant the prisoner some indulgences, the jailer must apply to the proper authorities for permission to grant the same.

In Clap v. Cofran, 10 Mass. 373, one Nutting was committed to prison upon an execution for debt, and, as authorized by a statute of Massachusetts, gave bond for the liberty of the jailyard during the daytime while imprisoned. The jailer, however, permitted him to occupy his (the jailer's) apartments frequently during the night, which he had no authority to do; and it was held that the jailer had permitted a voluntary escape. The jailer attempted to justify his conduct upon the ground that it had been the custom or practice of jailers for a long time to permit prisoners for debt to occupy during the nighttime the apartments occupied by the jailer and his family, and to take his meals with them. But the court said:

"The fact that the jailer had for a long time permitted and indulged his prisoners in the privilege of spending their evenings in the kitchen in his dwelling did not excuse the jailer for the escape; that any partial indulgence, depending upon the favor of the jailkeeper, was an abuse of his authority which could not be justified by its continuance for any length of time."

The admitted facts in this case show that this defendant disregarded the duty imposed upon him, both by the law of this state, and of the United States, as well as the order of the court committing Fritsche to his custody for the offense for which he was convicted. For a violation of the law of the state or the United States he is not, of course, on trial; but for his disregard of the order of commitment he is amenable to this court. The government has brought this proceeding mainly for the purpose of obtaining a determination of the law upon the subject, and to prevent sheriffs and jailers of the respective counties in this District from permitting United States prisoners committed to their custody for violations of the laws of Congress from leaving the jail and returning thereto at their will and pleasure to attend to their own private matters. Such practice makes the sentencing of United States prisoners to the county jails in this District a mere farce, and it cannot longer be tolerated.

The defendant says he did not intend to do anything wrong in permitting Fritsche to go from the jail and return thereto at his pleasure; in fact, that he did not know that he was violating any duty imposed upon him, and assures the court that so far as he is concerned the practice will be immediately discontinued. There is no reason to doubt the sincerity of his statement. The purpose of the government

in bringing the proceeding will be as fully accomplished by imposing a small fine only, as it would be by imposing a more severe punishment; but jailers are warned that they must not disregard the warrants committing United States prisoners to their custody for violations of the laws of the United States. The defendant is adjudged guilty of contempt and fined in the sum of $10 and the costs of this proceeding. Should this fine and this warning not be sufficient to stop the practice complained of, jailers who may be brought before this court in the future, charged with like contemptuous conduct, will upon conviction thereof be dealt with much more severely.

Upon payment of this fine and costs the defendant will be discharged. It is ordered accordingly.