[L. A. Nos. 6362, 6662.   In Bank.—March 15, 1921.]

COUNTY OF LOS ANGELES, Appellant, v. JOHN C. CLINE, Sheriff, etc., Respondent.

[1] MANDAMUS—MONEY RECEIVED BY SHERIFF IN OFFICIAL CAPACITY—ACCOUNTING TO COUNTY.—*Mandamus* is the proper remedy to compel a sheriff to account and pay into the county treasury money received by him in his official capacity for services and supplies to be furnished by the county to the party making payment of the money.

[2] PRISONS—COMMITMENT OF FEDERAL PRISONERS TO STATE JAILS—CONDITIONS AND JURISDICTION.—In view of sections 1601 and 1611 of the Penal Code and sections 5539 and 5547 of the Federal Statutes, federal prisoners are to be received in the jails of the counties of the state under the same conditions and subject to the same jurisdiction and control as state prisoners, and are to be fed and provided for in the same manner by the sheriff, subject to contract between the attorney-general and the county authorities for compensation to the county for their maintenance.

[3] ID.—COMMITMENT MATTER OF COMITY.—The right of the United States to commit prisoners to the jails or prisons of a state is purely a matter of comity extended by the states, and is subject to such demands for compensation as may be determined by contract with the proper authorities.

[4] PUBLIC OFFICERS — MONEY RECEIVED BY SHERIFF FROM UNITED STATES—SUPPORT OF FEDERAL PRISONERS—COUNTY MONEY—DUTY OF SHERIFF.—In view of sections 1601 and 1611 of the Penal Code, sections 4290, 4292, and 4294 of the Political Code, and sections 5539 and 5547 of the Federal Statutes, all money received by the sheriff from the United States for the support of federal prisoners confined in the county jail is for the use of the county, and it is his duty to account for and pay over the same to the county treasurer.

[5] ID.—EXPENSES INCURRED IN SUPPORT OF FEDERAL PRISONERS—CLAIM AGAINST COUNTY.—It is the duty of the sheriff to put in his claim to the county for expenses incurred for support of federal prisoners in the same manner and at the same rates as for prisoners committed by the state.

[6] ID.—CONTRACT FOR COMPENSATION OF CARING FOR FEDERAL PRISONERS—FUNCTION OF BOARD OF SUPERVISORS.—It is the function of the board of supervisors as the constituted business agents of the county to contract with the federal authorities as to the compen-

---

1. *Mandamus* against public officers, note, 98 **Am. St. Rep.** 863.

sation to be demanded for caring for federal prisoners while confined in the county jail, which compensation may not only include the expense of feeding them, but a just charge for all other supplies and services incident to maintaining and guarding them.

[7] Id.—Expenses Incurred in Caring for Prisoners—Keeping of Account—Duty of Sheriff.—It is the duty of the sheriff to keep an accurate account of all expenses so incurred by him in caring for prisoners in his charge.

[8] Id.—Accounting by Sheriff—Burden of Proof.—In a *mandamus* proceeding by a county against its sheriff to compel him to account for and pay into the county treasury money received by him from the United States for the support of federal prisoners confined in the county jail, the burden is upon the defendant to show that he expended the money legitimately, and to satisfactorily show, in accordance with the rules governing the accounting of trustees, what amounts, up to the legal rate, were expended in the feeding of such prisoners.

[9] Id.—Laches of County—Acquiescence in System of Sheriff—Estoppel.—Where county authorities for many years knowingly permitted the sheriff to deal with money received by him from the United States for the care of federal prisoners in the county jail, as a personal matter without requiring him to keep any account or make any returns to the county, the county is estopped as to past transactions by its own laches from requiring the sheriff to pay the full amount received by him into the county treasury and then resort to his claim against the county for reimbursement.

APPEALS from judgments of the Superior Court of Los Angeles County. L. H. Valentine and Chas. Wellborn, Judges. Reversed.

The facts are stated in the opinion of the court.

A. J. Hill, Hugh Gordon and Paul Vallee for Appellant.

Gesner Williams, Milton M. Cohen and George E. Cryer for Respondent.

SLOANE, J.—The record here includes two appeals presenting substantially the same issue in each. The proceedings are in *mandamus* to require the sheriff of the county of Los Angeles to account for and pay into the county treasury money received by him from the United States for the support of federal prisoners confined in the county jail.

[1] If the contention of the petitioner is correct that this money was received by the sheriff in his official capacity in payment for services and supplies to be furnished the federal government by the county of Los Angeles, *mandamus* is the proper remedy to compel a performance of the official duty to properly account for such funds. It is the contention of the respondent, however, that in receiving and maintaining federal prisoners in the county jail the sheriff is acting for and as the agent of the United States and is not accountable to the county for money received for the support of such prisoners.

We think an examination and comparison of the state and federal statutes relating to the matter makes it sufficiently clear that this contention cannot be upheld. The following sections of the Penal Code of California and of the United States Revised Statutes practically cover the law on the subject.

Section 1601 of the Penal Code makes it one of the official duties of the sheriff as a state officer to receive and keep federal prisoners committed to the jail, where provision is made by the United States for their support. Section 1611 of the Penal Code requires the sheriff to receive all prisoners committed by competent authority and directs him to provide them with food, clothing, and bedding, for which he shall be allowed a reasonable compensation to be determined by the board of supervisors, and to be paid out of the county treasury, "except as provided in the next section" (which exception has no application to the matter involved here).

Section 5539 of the federal statutes [8 Fed. Stats. Ann., 2d ed., p. 277; U. S. Comp. Stats., sec. 10523] provides that all United States criminals imprisoned in state jails or prisons "shall in all respects be subject to the same discipline and treatment as convicts sentenced by the state courts in which such jails are situated, and shall while so confined be exclusively under the control of the official having charge of the same under the laws of such state." Under section 5547 of the federal statutes [8 Fed. Stats. Ann., 2d ed., p. 288; U. S. Comp. Stats., sec. 10548], it is directed that the attorney-general "shall contract with the managers or proper authorities having control of such prisoners, for their imprisonment, subsistence and proper employment."

[2] The only reasonable deduction from these interre-lated provisions of the state and federal laws is that federal prisoners are to be received under the same conditions and subject to the same jurisdiction and control as state pris-oners, and are to be fed and provided for in the same manner by the sheriff, subject to contract between the attorney-general and the county authorities for compensa-tion to the county for their maintenance.

It is difficult to understand how the practice has been established and recognized of making this support of federal prisoners merely a matter of personal contract between the sheriff and federal authorities for the payment of a per diem rate for feeding the prisoners, while all the other out-lay for jail room, guards, beds and bedding, heat, light, cooking, laundry, and other service is furnished by the county without remuneration. [3] The right of the United States to commit prisoners to the jails or prisons of a state is purely a matter of comity extended by the states and is subject to such demands for compensation as may be deter-mined by contract with the proper authorities. (*Ex parte Shores,* 195 Fed. 627.)

It is admitted in the record that during all the period covered by these *mandamus* proceedings there has been paid to the sheriff for the support of federal prisoners in the Los Angeles jail thirty-five cents per day for each prisoner, and that for the total period under the first proceeding, No. 6362, from January 4, 1915, to and including March 31, 1918, the amount so received was $11,230.96; and for the period covered by the second proceeding, No. 6662, from April 1, 1918, to August 19, 1919, the amount was $4,091.15.

It is conceded that no part of this money has been ac-counted for or paid over to the county of Los Angeles, but it is alleged to have been entirely expended by the sheriff in furnishing meals to the federal prisoners.

During a portion of the time involved in these transac-tions the sheriff of the county of Los Angeles has been entitled to a salary of four thousand dollars per annum, and for the remainder of the time to a salary of six thou-sand dollars per annum; and whether, under the code or the charter of Los Angeles County, the law has been that the salary so allowed should be in ''full compensation for all services of every kind and description'' rendered by

virtue of his office.   Moreover, under the law already cited and the further provisions of section 4290 of the Political Code, it is evident that in boarding federal prisoners the sheriff is subject to the same rules and limitations as are prescribed for prisoners of the state of California.   Section 4290 of the Political Code provides that the supervisors shall allow to the sheriff his necessary expenses for boarding prisoners in the county jail, providing that the board of supervisors shall fix a reasonable price at which such prisoners shall be boarded, which price, since the amendment of 1917, [Stats. 1917, p. 1323], is not to be less than twelve cents for each meal for each person.   It appears that the board of supervisors fixed the price of boarding prisoners in the county jail prior to the amendment at eight cents, and since at twelve cents per meal.

It is also made the duty of all officers by constitutional provision and statutory enactment to immediately turn over to the treasurer or other legal depositary all moneys collected for the use of any county, city or town, or other public or municipal corporation.   (Const., art. XI, sec. 16; Pol. Code, secs. 4292–4294.)

[4–6]   We are of the opinion that all moneys coming into the hands of the sheriff for the support of federal prisoners is for the use of the county, and that it was and is the duty of the sheriff to account for and pay over to the county treasurer all moneys so received by him, and to put in his claim to the county for expenses incurred for support of federal prisoners in the same manner and at the same rates as for prisoners committed by the state of California; and that it is the function of the board of supervisors as the constituted business agents of the county to contract with the federal authorities as to the compensation to be demanded for caring for federal prisoners while confined in the county jail.   It is entirely obvious that such compensation may not only include the expense of feeding the prisoners but a just charge for all other supplies and services incident to maintaining and guarding them.   Neither is it reasonable to suppose that the law on this subject is to be construed as making the sheriff the officer of the county to negotiate a contract of this kind involving compensation for so extensive a service by the county.   (*Avery* v. *Pima*

*Co.,* 7 Ariz. 26, [60 Pac. 702]; Pol. Code, secs. 4000–4003, 4041.)

[7] It is, also, clearly the duty of the sheriff to keep an accurate account of all expenses so incurred by him in caring for prisoners in his charge. It is held in *San Francisco* v. *Mulcrevy,* 15 Cal. App. 11, [113 Pac. 339], and *County of Alameda* v. *Cook,* 32 Cal. App. 165, [162 Pac. 405], that the services performed by a county clerk under the federal naturalization laws are performed as an officer of the state, and that the fees allowed such clerk must be accounted for to the county. If such is the law in a matter so purely one of federal jurisdiction as that of naturalization of aliens, how much more clearly must it appear that the sheriff is acting as an officer of and in behalf of the county in extending the hospitality of the county jail to federal prisoners.

In *Board of Freeholders* v. *Kaiser,* 75 N. J. L. 9, [69 Atl. 25], the New Jersey court was dealing with the precise question presented here, under a statute substantially like our own. The court there says: ''Section 33 of the act governing sheriffs makes it the duty of the sheriff of every county to receive all persons committed to his custody by the authority of the United States. He takes them into his custody as sheriff. He remains responsible for them as sheriff, and all moneys paid to him on their account are paid to him as and received by him as sheriff. This being so moneys paid to him by the federal government in excess of what was needed for the food and care of federal prisoners was paid to him as compensation for services rendered and duties performed with relation to them as sheriff, and the salary provided by the act of 1905 is in lieu of such compensation.''

Our statutes go further than this. Having provided a complete scheme for compensating the sheriff by county appropriations for the board and maintenance of all prisoners committed to the county jail, it becomes the duty of the sheriff to account to the treasurer for all moneys received from the government for its prisoners, and to present his claim to the county for his remuneration, just as in the case of prisoners committed by the state courts. It does not follow that if the federal authorities see fit to stipulate and provide for a more liberal allowance than twelve cents per

meal and two meals per day for each of its prisoners, the supervisors may not authorize such special expenditure. But as the law stands, twelve cents per meal and two meals a day is the allowance authorized by the supervisors for each prisoner. The allowance of thirty-five cents per day was the entire amount paid by the United States for the maintenance of its prisoners in the county jail. In the absence of express authority to do so the sheriff surely is not at liberty to expend this entire allowance for meals supplied the prisoners. According to the respondent's own averments he has expended the whole amount of thirty-five cents per day for their food alone, leaving all other items of cost to the county unprovided for. Even if he had the right to retain in his own hands the money necessary to feed the prisoners, he has made unauthorized use of eleven cents a day per prisoner.

[8] . The burden is upon the respondent to satisfactorily account for the money received by him from the federal authorities and to show that it has been disposed of according to law.

In case No. 6362, which was tried on its merits, there is a failure of the trial court to find what disposition was made of the sum received from the United States. The finding is "that some part, if not all, of the sum of $11,230.96 paid to the respondent by the United States for the support of prisoners committed under authority of the United States and imprisoned in the county jail was expended and actually paid out by respondent for such purposes." This is not a finding at all as to the disposition of any specific part of this fund. Respondent is chargeable with all of it, and the burden is upon him to show that he expended it legitimately and to satisfactorily show in accordance with the rules governing the accounting of trustees (*Bone* v. *Hayes,* 154 Cal. 759, [99 Pac. 172]), what amounts, up to the legal rate, have been expended in the feeding of federal prisoners. Any balance not so accounted for he should be required to pay to the county treasurer.

The conclusion of the trial court from the facts is that the petitioner is not entitled to have the writ of mandate issue inasmuch as it would be inequitable to do so, and judgment was given denying the writ.

Under the views of the law herein expressed the judgment will have to be reversed.

We agree with the conclusion of the court, however, as to the inequity of such an application of the law under the circumstances shown in evidence as would deprive the respondent of compensation for feeding the federal prisoners within the amount per day which he was authorized to expend.

The system followed of permitting the sheriff of the county to deal with this fund as a personal matter and without keeping any accounts or making any returns to the county has gone on through successive incumbencies of the sheriff's office for many years. The county authorities have been aware of the condition and have, in effect, consented to it, and are as much to blame for a misconception and misinterpretation of the law as is the sheriff.

[9] While this mutual misconception of the law cannot relieve the sheriff from liability to account for all the money so received which is justly due the county after crediting him with amounts legally expended, we are of the opinion that the county is estopped as to past transactions by its own laches from requiring respondent to pay the full amount received into the county treasury, and then resort to his claim against the county for reimbursement. If necessary for his protection he should be permitted to retain and apply as money advanced by him all amounts shown to have been legitimately expended by him in support of the federal prisoners in his charge, prior to the commencement of this action.

In the second proceeding, case No. 6662, the petition for writ of mandate was dismissed upon sustaining of respondent's demurrer to the petition as not stating a cause of action. This ruling on the demurrer and order of dismissal was erroneous.

On the grounds set out in the foregoing opinion the judgment in each case is reversed.

Shaw, J., Olney, J., Lennon, J., Wilbur, J., Angellotti, C. J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred.