**UNITED STATES v. DAVIS et al.**
**Criminal No. 76833.**

District Court of the United States for the District of Columbia.

May 28, 1947.

James J. Laughlin, of Washington, D. C., for defendant Davis; Charles E. Ford, for defendant Sanderlin, both of Washington D. C., for the motions.

George Morris Fay, U. S. Atty., and John C. Conliff, Jr., Asst. U. S. Atty., both of Washington, D. C., opposed.

HOLTZOFF, Justice.

The defendants, Hubert C. Davis and Oscar C. Sanderlin, are members of the Metropolitan Police Department of the District of Columbia. On April 3, 1946, they were temporarily assigned to the Dis-

trict of Columbia Jail as guards and were detailed to watch two prisoners, Joseph D. Medley and Earl McFarland, both of whom were awaiting execution after conviction of murder in the first degree. During the defendants' tour of duty, the two prisoners escaped.[1] The defendants were indicted on a charge of negligently permitting and suffering the escape, and were found guilty by the jury. They now move for a new trial or for judgment of acquittal non obstante veredicto.[2]

For the purposes of this discussion, it is not necessary to summarize the evidence bearing on the issue of the defendants' negligence. Whether the defendants' conduct as guards amounted to criminal negligence was the issue of fact submitted to the jury for its decision. As it is the view of the court that the evidence was susceptible of the inference that the defendants were negligent, the verdict of the jury should not be disturbed.

The question is now presented, however, whether as a matter of law the prosecution may be maintained. The infraction with which the defendants are charged, is not a statutory offense. Although the District of Columbia Code contains a comprehensive enumeration and comprises detailed definitions of crimes, the common law of crimes still prevails in this jurisdiction. The common law and all British statutes in force in Maryland on February 27, 1801, still remain in force, except insofar as they are inconsistent with or are replaced by subsequent legislation of Congress. D.C.Code 1901 § 1, D.C.Code 1940 § 49—301. Consequently, all common law offenses not covered by the Code, or by any other Act of Congress in force in the District of Columbia, are still recognized as crimes in this jurisdiction and are punishable as such, DeForest v. United States, 11 App.D.C. 458; Hill v. United States, 22 App.D.C. 395; Tyner v. United States, 23 App.D.C. 324; Hamilton v. United States, 26 App.D.C. 382; Palmer v. Lenovitz, 35 App.D.C. 303.

At common law, an officer charged with the legal custody of a prisoner, who

---

[1] The prisoners were later recaptured.

[2] Rule 29(b) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687.

negligently suffered or permitted him to escape, was guilty of a misdemeanor. Apparently, however, the offense was punishable solely by a fine, 4 Blackstone's Commentaries, Ch. X, Sec. 4, p. 130; Hawkins, Pleas of the Crown, Book II, Ch. 19, Sec. 31; 1 Hale, Pleas of the Crown, Ch. 52; Ex parte Shores, D.C., 195 F. 627. The District of Columbia Code contains a general provision prescribing a fine not exceeding $1,000, or imprisonment for not more than five years, or both, as punishment for any offense not specifically covered by statute. D.C.Code 1940, § 22—107. Since any offense potentially punishable by imprisonment for more than one year is a felony, all common law misdemeanors, not embodied in any Act of Congress, became felonies in the District of Columbia, Palmer v. Lenovitz, 35 App.D.C. 303. By this metamorphosis "negligent escape," which was originally a misdemeanor punishable by a fine only, was, unwittingly perhaps, transformed into a felony. It is difficult to conceive that when the Congress enacted the above-mentioned general provision, it envisaged the possibility that every common law misdemeanor, even if of a minor character, was being raised to the gravity of a felony. The attention of the Congress may well have been directed to heinous crimes that are still prosecuted in the District of Columbia as common law offenses.[3] Even if in this case the Court were to impose the penalty of a fine, as seems to have been contemplated by the common law, nevertheless, the serious consequences that attach to every conviction of a felony would still be present. In the light of these considerations, it is important to examine thoroughly the obscure and antiquated learning on this subject, with a view to ascertaining the exact scope of the common law offense. The definition of this violation of law should not be enlarged beyond its original confines. This attitude accords with the general principle that definitions of crimes should be strictly construed in favor of the defendant. In this connection it should be borne in mind that the issue is not whether the defendants should receive administrative discipline, nor even whether they

should be fined. The real question is whether they should be branded as felons.

There appear to be no reported cases on the subject of "negligent escape" in the District of Columbia. In fact, the Court is informed that no one has ever been criminally prosecuted for this offense in this jurisdiction, as far as the records disclose. Moreover, there appear to be no decisions on this topic in Maryland, through which we derive our common law. Consequently, recourse must be had to English authorities, as well as to decisions of other States.

The precise question to be considered and determined is who was subject to prosecution at common law for a negligent escape. 1 Russell on Crime and Misdemeanors (Ninth American, from the Fourth London Edition) 585, contains the following discussion of this subject:

"But it seems that *an indictment for a negligent escape will only lie against those officers upon whom the law casts the obligation of safe custody, and wi'l not lie against the mere servants of such officers.*[4] Thus, where the indictment was against one of the yeoman wardens of the Tower and the gentleman gaoler, for permitting Colonel Parker, who was committed for high treason, to escape, it appeared that the constable of the Tower had committed the colonel to their special care; but the Court held that the defendants were not such officers as the law took notice of, and therefore could not be guilty of a negligent escape. And upon the same principle another wardour of the Tower appears also to have been acquitted of a negligent escape. It appears, however, that a sheriff is as much liable to answer for an escape suffered by his bailiff as if he had actually suffered it himself; that the Court may charge either the sheriff or bailiff for such an escape; and that, if a deputy gaoler be not sufficient to answer for a negligent escape, his principal must answer for him."

The same views are repeated by Bishop (2 Bishop's Criminal Law, Ninth Edition, Section 1097):

---

[3] E. g., sodomy is prosecuted in the District of Columbia as a common law offense, because it is not defined in the Code.

[4] Emphasis supplied.

"It seems, however, that an indictment for a negligent escape will only lie against those officers upon whom the law casts the obligation of safe custody, and will not lie against the mere servants of such officers."

The foregoing authorities would indicate that the only person who was subject to prosecution at common law for negligent escape was either the sheriff or tthe person in charge of the institution to which the prisoner was committed and to whom, therefore, the lawful custody of the prisoner was entrusted.

The only American case on this point appears to be State v. Errickson, 32 N.J.L. 421, decided by the Supreme Court of New Jersey in 1868. The opinion in that case adopts the same doctrine and clearly explains why at common law criminal liability for negligent escape attached to the sheriff and to the keeper of the jail, but not to their subordinates. The facts in that case were exactly parallel to those involved in the case at bar. They were summarized by the Court as follows (Id., page 421):

"The defendant was indicted and convicted for negligent escape. It appeared upon the trial, that one Jackson, who had been convicted of grand larceny, escaped from the county jail, to which he had been legally committed; that the defendant had been employed by the sheriff to watch this criminal at night; that one Mrs. Smalley was the keeper of the jail, and that she kept the keys of the cell doors in her own room. Another prisoner, Tienny, escaped with Jackson. The cell door of Jackson was found, in the morning, unlocked. The defendant had the keys of the outside door of the jail. The prisoner was locked up by the jailer. The defendant, about twelve o'clock at night, laid down on a bench, near the stove, in the jail, outside of the cells, and there fell asleep. The next morning, just after daylight, it was discovered that Jackson had got out, by unlocking both his cell door and the outside door of the jail. The defendant was not an officer of the prison, being employed, for the occasion, to watch Jackson at night."

The Supreme Court reversed the conviction and discussed this question as follows (page 422):

"The offense of suffering, by negligence, a prisoner to escape, is one which can be committed only by the person in whose charge the law places the criminal. *This rule is reasonable, for such person alone has the control of the imprisonment, and can thus take the measures necessary to prevent the escape of the prisoner.*[4] Going then, upon the facts as stated in the case, it is clear that on the occasion in question, the sheriff and the keeper of the jail were each guilty of a negligent escape. The prisoner was in their custody, and they are responsible in law for the negligence of the defendant, who was their agent. *It is also equally certain that such agent could not commit this offense.*[4] The books do not leave this rule of the law in any uncertainty."

Kavanaugh v. State, 41 Ala. 399, is cited in support of the opposite contention. In that case, however, the indictment was based on a State statute and not on the common law rule. Moreover, the court called attention to the fact that the indictment averred that the defendant had the legal custody of the prisoner, and that it must be presumed that this averment was proven. The court did not pass on the question whether at common law a subordinate of the keeper of the jail was criminally liable for a negligent escape.

The foregoing review of what appear to be the only authorities on this topic, inescapably leads to the inference that at common law a prosecution for negligent escape would lie only against the sheriff, the keeper of the jail, or other officer into whose official custody the prisoner was committed by judicial process or otherwise. Such a prosecution could not be maintained against a guard or a watchman or other subordinate. The reason for this distinction is that the superior officer is clothed with the primary responsibility for the custody of the prisoner and has authority to take whatever measures he deems necessary for his security. In any event, whatever be the reason for the doctrine, the rule seems clear. Since in the District of Columbia there is no statute on the subject and the prosecution would lie only if it could have been maintained at common law, the ulti-

---

[4] Emphasis supplied.

mate conclusion follows that these defendants, who were acting in the capacity of guards or watchmen, may not be convicted of negligent escape.

Since the basic facts appear in the indictment, the court, instead of granting a new trial, or entering a judgment of acquittal notwithstanding the verdict, will make an order in arrest of judgment.[5]

Order in arrest of judgment granted.

---

[5] Federal Rules of Criminal Procedure, rule 34, 18 U.S.C.A. following section 687.