## UNITED STATES v. DAVIS et al.
### No. 9563.

United States Court of Appeals
District of Columbia.

Submitted Nov. 26, 1947.

Decided Feb. 24, 1948.

Writ of Certiorari Denied June 14, 1948.
See 68 S.Ct. 1501.

Mr. Oliver O. Dibble, Assistant United States Attorney, of Washington, D. C., with whom Messrs. George Morris Fay, United States Attorney, of Washington, D. C., and John C. Conliff, Jr., Assistant United States Attorney, of Washington, D. C., were on the brief, submitted on the brief for appellant.

Mr. James J. Laughlin, of Washington, D. C., submitted on the brief for appellee Davis.

Mr. H. Clifford Allder, of Washington, D. C., submitted on the record for appellee Sanderlin.

Before EDGERTON, CLARK, and WILBUR K. MILLER, Associate Justices.

CLARK, Associate Justice.

Appellees were members of the Metropolitan Police Department of the District of Columbia. During the early morning hours of April 3, 1946, they were on duty as police officers assigned as guards in the death cell of the Washington Asylum and Jail, with instructions to guard four men confined there who were awaiting execution following conviction for murder in the first degree. Two of these prisoners escaped during the appellees' tour of duty, and appellees were subsequently indicted and tried in the District Court of the United States for the District of Columbia for the common law offense of "negligent escape."

The jury found the appellees guilty as charged. Following this verdict the trial judge ordered the arrest of judgment, pursuant to Rule 34 of the Federal Rules of Criminal Procedure.[1] The order was accompanied by an opinion[2] holding that appellees, acting in the capacity of guards or watchmen, were not subject to prosecution for the offense of negligent escape under the common law. The Government appealed to this court in an effort to nullify the order in arrest of judgment.

The offense of negligent escape under the common law has been thus defined: "A negligent escape is when the party arrested or imprisoned doth escape against the will of him that arrested or imprisoned him, and is not freshly pursued and taken again, before he hath lost the sight of him."[3] The offense remains a crime in the District of Columbia by virtue of D.C.Code 1940, § 49—301, which provides that the common law and all British statutes in force in Maryland on February 27, 1801, shall remain in force, except insofar as they are inconsistent with, or are replaced by, subsequent legislation of Congress. Punishment for this offense is not specifically prescribed in the District of Columbia Code, and for that reason it is included within the general provision of D.C.Code 1940, § 22—107 which prescribes a fine not exceeding $1,000, or imprisonment for not more than five years, or both, as punishment for any offense not specifically covered by statute. Under the local law, therefore, conviction of negligent escape invokes the punishment of a felony although it was apparently classified as a misdemeanor at common law.[4]

There is no question before us as to the propriety of the assignment of the appellees to duty at the Jail, nor is there any question remaining as to their negligence in the performance of their duties at the Jail, since that question has been determined by the jury after being submitted to them as an issue of fact. We proceed to consider, then, whether the trial judge was correct in ordering the arrest of judgment.

The reported cases in the District of Columbia and Maryland disclose no precedent for this action.[5] It is apparent that the question presented on this appeal is shrouded in some obscurity. The trial judge relied principally on one English decision and one New Jersey decision as a basis for the conclusion which led to the order arresting judgment. The first of these is Rex v. Hill and Dod, Old Bailey, 1694. There follows a statement of that case by Thomas Chitty: "T. Hill, a yeoman warden of the Tower, and Dod, the gentleman gaoler there, were indicted for the negligent escape of Colonel Parker, committed to the Tower for high treason. Lord Lucas, the constable of the Tower, had committed the colonel to the care of the defendants, to be kept in the house of the defendant Hill. The judges present were of opinion, that the defendants were not such officers as the law took notice of, and therefore could not be guilty of negligent escape. *It was merely a breach of trust to Lord Lucas, their master.*"[6] [Italics supplied.] The second case is State v. Er-

[1] "Rule 34. Arrest of Judgment. The court shall arrest judgment if the indictment or information does not charge an offense or if the court was without jurisdiction of the offense charged. * * *" 18 U.S.C.A. following section 687.

[2] 1947, 71 F.Supp. 749.

[3] 1 Burn's Justice of the Peace (8th Ed., 1764) 6. See also Dalton's Country Justice (Nelson's Ed., 1727) 510; 2 Coke's Institutes (1817) 588; 1 Russell on Crimes (9th Am. from the 4th London Ed., 1877) 583; State v. Wedin, 1914, 85 N.J.Law 399, 89 A. 753.

[4] 1 Hale, Pleas of the Crown (1st Am. Ed., 1847) 599; 2 Hawkins, Pleas of the Crown (8th Ed., Curwood, 1824) Ch. 19, Sec. 31; 2 Cooley's Blackstone (4th Ed., Andrews, 1899) 1306; Ex parte Shores, D.C., N.D.Iowa 1912, 195 F. 627. See Palmer v. Lenovitz, 1910, 35 App.D. C. 303.

[5] The one Maryland decision concerning negligent escape which we have found involved a slave-owner's suit for damages against a sheriff for the negligent escape of a slave confined in the jail for which the sheriff was responsible, and is not helpful to the question sub judice. Slemaker v. Marriott, 1833, 5 Gill & J. 406.

[6] 1 Burn's Justice of the Peace (8th Ed., 1764) 5, 6.

rickson, (1868), 32 N.J.L. 421, decided by the New Jersey Supreme Court. In considering that case it is important to note that Errickson, appealing from conviction of negligent escape, is identified as one not an officer of the prison, but as a person who had been employed by the sheriff (responsible for the county jail) to watch the prisoner at night. Chief Justice Beasley, delivering the opinion of the court, said at page 422 of 32 N.J.L.: "The offense of suffering, by negligence, a prisoner to escape, is one which can be committed only by the person in whose charge the law places the criminal. This rule is reasonable, for such person alone has the control of the imprisonment, and can thus take the measures necessary to prevent the escape of the prisoner. Going, then, upon the facts as stated in the case, it is clear that on the occasion in question, the sheriff and the keeper of the jail were each guilty of a negligent escape. The prisoner was in their custody, and they are responsible in law for the negligence of the defendant, who was their agent. It is also equally certain that such agent could not commit this offence." The opinion is concluded by a recitation of the case of Rex v. Hill and Dod, supra—obviously a precedent appropriately called into application.

The trial judge also cited statements by Bishop and Russell in their great works indicating "that an indictment for a negligent escape will only lie against those officers upon whom the law casts the obligation of safe custody, and will not lie against the mere servants of such officers."[7] Both writers make reference to Rex v. Hill and Dod, supra, immediately following the passage quoted, and it seems there can be little argument with their deductions. Also,

Bishop makes direct reference to Section 218 of his treatise which states the liability of a master for the crime of a servant carelessly selected. We think there can be no doubt that the master-servant relationship accounts for the decisions reached in the two cases relied upon by the trial judge, and that they furnish insufficient authority for the broad proposition that police officers acting as guards at a jail are not subject to prosecution for negligent escape. Here the police officers are independently responsible to the same authority, the Commissioners of the District of Columbia, as is the Superintendent of the Washington Asylum and Jail.[8]

But we may go farther. Laicock's Case, Latch 187, 82 Eng.Rep. 338 (1625), contains a seed of distinction on the point of indictability for negligent escape which enjoyed growth and maintenance. There was a civil action for damages directed against a sheriff for escape which was based on the fraud and fault of the sub-sheriff, who was responsible to the sheriff. The action succeeded, the court holding that the sheriff was the sole officer of the court and alone responsible for a default in the execution of his office. Justice Jones is recorded as being in accord "but with the difference that the sheriff should not be imprisoned by the act of the sub-sheriff, nor an indictment issued against him on the act of his sub-sheriff." Ibid. In Rex v. Fell, 1 Salk. 272, 273, 91 Eng.Rep. 237 (1699), the eminent Lord Holt made this plain statement: "The prisoner is in custody both of the gaoler and of the sheriff, and if he be committed to the sheriff, and the gaoler suffer him to escape, the gaoler is punishable; for the sheriff shall answer civilly for the faults of his gaoler, but not

---

[7] United States v. Davis et al., D.C., 1947, 71 F.Supp. 749, 751. The citations are 1 Russell on Crimes and Misdemeanors (9th Am. from the 4th London Ed., 1877) 585, and 2 Bishop's Criminal Law (9th Ed.) Sec. 1097.

[8] D.C.Code 1940, § 4—103: "The commissioners of said District [of Columbia] shall appoint to office, assign to such duty or duties as they may prescribe, and promote all officers and members of said Metropolitan police force * * *." D. C.Code 1940, § 24—411: " * * * The

superintendent and all other employees of each of the institutions enumerated in section 24—409 shall be appointed by the Commissioners of the District of Columbia upon nomination by the Board [of Public Welfare] and shall be subject to discharge by the Commissioners upon recommendation of the Board." (Section 24—409 enumerates the Washington Asylum and Jail.) See Zinkhan v. District of Columbia, 1921, 50 App.D.C. 312, 271 F. 542.

criminally." And in 2 Bacon's Abridgement of the Law (1736) we find this statement, at page 242: "Where one hath the custody of a gaol of freehold or inheritance, and commits it to another person, who is insufficient, the superior is answerable for all escapes suffered by his inferior; *but if the inferior be sufficient, the action must be brought against him, and not against the superior.*" [Italics supplied.]

Later cases clearly establish the proposition that a sheriff, having supervisory responsibility of a jail, was liable in civil actions for the faults of his underlings. The reason underlying the proposition is well explained in Saunderson v. Baker and Martin, 3 Wils. 309, 311, 95 Eng.Rep. 1072 (1772): "A sheriff appoints his bailiffs or officers to do the acts which the sheriff himself is bound and obliged, by law, to do; he takes security, both by bond and oath, from the officers to indemnify himself, and if the King's subjects are hurt or injured by the wrongful acts or trespasses of such officers, they must resort to the sheriff himself to be repaired in damages for such wrongs and trespasses." In Ackworth v. Kempe, 1 Douglas 41, 43, 99 Eng.Rep. 30 (1778), Lord Mansfield said: "For all civil purposes the act of the sheriff's bailiff is the act of the sheriff," citing the Saunderson case. To the same effect is the holding in Woodgate v. Knatchbull, 2 T.R. 148, 100 Eng.Rep. 80 (1787), where, however, two Justices note the distinction between the civil and criminal liability of the sheriff. Justice Ashhurst said (2 T.R. 154): "There is one general principle which appears to be clear, that the sheriff is personally liable for every act of his bailiff. This is laid down in Latch,[9] where it is said that the sheriff shall be answerable in damages for the act of his officers, though he be not liable to be indicted for their misconduct." Justice Buller said (2 T.R. 155, 156): "The sheriff is the only officer known to this Court; he may employ whom he pleases; but he is answerable civiliter for the acts of all those employed by him. * * * So long ago as the case in Latch [10] the line was

drawn with so much precision that it does not admit of any doubt. There it is explained to mean, that the sheriff shall not be imprisoned or indicted for the acts of his bailiff, but that an action lies against him by the party grieved for damages, and he shall be fined. So that he is not liable to any corporal punishment; but where it rests in damages, he shall make the party a pecuniary satisfaction. This doctrine was recognized in the Common Pleas in the case of Saunderson v. Baker, where Gould, J. said (3 Wils. 316): 'As to the sheriff's liability to answer civiliter and not criminaliter for the acts of his officers, the books mean that the sheriff is not liable to an indictment.' Therefore the distinction is so clear that it cannot be shaken." A compiler's note appended to the reprint of Rex v. Fell, supra, appearing at 91 Eng.Rep. 238, defines the liability of the sheriff by briefly condensing the statements of Justices Buller and Gould.

Turning to a modern compilation of the law, we find this statement in 2 Wharton's Criminal Law (12th Ed., 1932) § 2016: "The deputies of a jailer are charged with the same high responsibilities as are imposed on the jailer himself. It is otherwise, however, with his servants, who are not deputies, and who are only responsible for negligence in their particular spheres, or for connivance." Three cases are cited in support thereof, one of which, State v. Errickson, supra, we had occasion to examine hereinbefore. The second is Kavanaugh v. State, 1868, 41 Ala. 399, where the appellant had been specially deputized by the sheriff to hold a prisoner in custody, and was appealing from a conviction for negligent escape. There the indictment was based on an Alabama statute; however, the Supreme Court of Alabama considered the common law background of the offense at some length and concluded, in part, as follows on page 404 of 41 Ala.:" * * * yet, as we have shown, any person who had the legal custody of another, upon a criminal charge, and suffered him to escape by negligence, was guilty of a misdemeanor at

---

[9] The reference is to Laicock's Case, Latch 187, 82 Eng.Rep. 338 (1625).

[10] Supra, note 9.

common · law, * * *." The third is State v. Lewis, 1893, 113 N.C. 622, 18 S.E. 69, wherein the Supreme Court of North Carolina affirmed the conviction of a jailer for negligent escape. In that case it appears that the jailer had entrusted some of the keys of the jail to an assistant he had hired, and that it was the negligence of the assistant which permitted the prisoner to escape. The court held that the trial judge properly instructed the jury that the only question was whether the defendant had exercised due care in the employment of his assistant. The court cited State v. Johnson, 1886, 94 N.C. 924, for the proposition that, as a general rule, it is not necessary to prove negligence when one has lawful custody of prisoners, for it is implied, unless occasioned by the act of God or the public enemy.[11] But the Johnson case is of more importance here for the decision that a person employed as a guard in a penitentiary is criminally responsible for the escape of a prisoner entrusted to his care, although as to him actual negligence must be proved.

In the case before us the indictment returned by the grand jury averred that the appellees were charged with the duty to keep close and secure custody and watch over the prisoners. Upon the record before us we find no reason to conclude that such averment was not sufficiently proved. The appellees were directly charged with the safekeeping of the prisoners and had the means immediately at hand to maintain their secure imprisonment.

By the authority of discovered adjudications and respected writers on the law, having regard for the evident policy thereby expressed, we conclude that appellees were properly subject to prosecution for the offense of negligent escape, and that the indictment sufficiently defined the crime. Therefore, the order in arrest of judgment cannot be sustained. United States v. Koon Wah Lee, D.C.Hawaii, 1947, 6 F.R.D. 456. It would be distinctly unreasonable, in our view, to say that the Superintendent of the Washington Jail was alone responsible to the government for the escape of prisoners occasioned by the negligence of police officers regularly assigned as guards at the Jail. Such escapes are of ill consequence to the public, and these appellees, as public officers, can have no refuge in rulings and observations on this point of law based on the master-servant relationship, which is inapplicable in their case. And even if the circumstances of this case had been presented to an English court in the eighteenth century we have no doubt that the state of the law concerning negligent escape would have compelled that court to rule that these appellees were properly indicted for that offense.

The order in arrest of judgment will be set aside and the case remanded for entry of judgment on the verdict.

Order set aside and case remanded.

---

[11] See 1 Russell on Crimes (9th Am. from the 4th London Ed., 1877) 584.