[Civil No. 723. Filed March 28, 1900.]
[60 Pac. 702.]

## GRANT A. AVERY et al., Defendants and Appellants, v. PIMA COUNTY, Plaintiff and Appellee.

1. UNITED STATES PRISONERS—IMPRISONMENT IN COUNTY JAILS—MAINTENANCE—CONTRACTS—PROPER PARTIES TO MAKE—REV. STATS. U. S., SECS. 5539, 5547, AND REV. STATS. ARIZ. 1887, PARS. 397, 398, 2459, 2460, 521, 1972, CONSTRUED.—Sections 5539 and 5547 of the Revised Statutes of the United States provide that United States criminals imprisoned in the jail or penitentiary of any state or territory shall be under the control of the officers having charge of the same, and authorize the attorney-general to contract with the proper authorities having control of such prisoners for their imprisonment, subsistence, etc. *Held,* construing the Revised Statutes of Arizona, *supra,* that the supervisors are the authorities that have the control and management of the United States prisoners, and are the proper persons with whom the department of justice should make the contract.

2. STATUTORY CONSTRUCTION—WEIGHT TO BE GIVEN CONSTRUCTION OF STATUTE BY THOSE CHARGED WITH ITS EXECUTION.—The contemporaneous construction of a statute by those charged with its execution, especially when it has long prevailed, is entitled to great weight, and should not be disregarded or overturned except for cogent reasons, and unless it be clear that such construction is erroneous.

3. OFFICERS—SHERIFFS—EXTRA COMPENSATION—SEC. 1765, REV. STATS. U. S. CONSTRUED.—Even if the sheriff were to be considered as a United States officer, so far as concerns his care of United States prisoners in the county jail, yet under section 1765 of the Revised Statutes of the United States, providing that no person whose salary is fixed by law shall receive any additional pay for any service unless the same is authorized by law, he is not entitled to extra pay for the care of such prisoners beyond his regular salary as county sheriff.

4. SAME—SAME—SAME—COMPENSATION PROVIDED BY LAW CONCLUSIVE—PARS. 496, 1972, 2447, 2457 (AS AMENDED BY ACT OF MARCH 19,

1891), REV. STATS. ARIZ. 1887, CONSTRUED.—The Revised Statutes, *supra*, define the duties of county sheriffs and prescribe their salaries. No provision of the statutes of Arizona authorizes payment to the sheriff for "caring for prisoners," whether United States prisoners or others. Where no compensation is by law attached to the office, the officer can recover none. Where a compensation is provided by law for an officer, it is conclusive, and the officer can recover nothing beyond it. Therefore, payment of a claim for "care of prisoners" is unauthorized.

5. BOARD OF SUPERVISORS—LIABILITY FOR MONEY WRONGFULLY PAID—GOOD FAITH—IMMATERIAL—PAR. 383, REV. STATS. ARIZ. 1887, AND ACT 34, APPROVED APRIL 3, 1893, AMENDING SAME, CONSTRUED.—Act 34 of the eighteenth legislature, approved April 3, 1893, amending paragraph 383 of the Revised Statutes of Arizona of 1887, provides that whenever any board of supervisors shall, without authority of law, order any money paid, for any purpose, such supervisors and the party or parties in whose favor such order shall have been made shall be responsible for all such sums of money and twenty per cent additional thereon. Suit having been brought under this act against a board of supervisors to recover money wrongfully ordered paid by them, *held*, that the board of supervisors make all orders for payments of money at their peril, and are liable for money paid without authority of law, though they act in perfect good faith, believing that they were authorized to make such order.

6. CONSTITUTIONAL LAW—COURTS—DUTY—TO APPLY AND ENFORCE LAW—IF CONSTITUTIONAL, OPPRESSIVENESS IS IMMATERIAL.—When an act is plain and unmistakable in its language, and is free from objection on constitutional grounds, the courts are bound to apply and enforce it, however unjust, oppressive, or objectionable in policy it may be.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Pima. George R. Davis, Judge. Affirmed.

The facts are stated in the opinion.

Barnes & Martin, and C. W. Wright, for Appellants.

Rochester Ford, for Appellee.

No provision of the statutes of Arizona or of the United States authorizes payment to the sheriff for "caring for prisoners," whether United States prisoners or others. *In re Kays*, 35 Fed. 288.

The sheriff is not entitled to extra compensation or reward

for doing that which is merely his duty. *Stockton* v. *Shasta,* 11 Cal. 113; *Shattuck* v. *Woods,* 1 Pick. 175; *McDonald* v. *Woodbury County,* 48 Iowa, 404.

The law will not tolerate the employment of a public officer to discharge his plain official duty at a compensation other or different from or in addition to the compensation given him by law for his official services. *Wilcoxson* v. *Andrews,* 66 Mich. 553, 33 N. W. 533; *State* v. *Silver,* 9 Neb. 85, 2 N. W. 215; *Hallman* v. *Campbell,* 57 Tex. 54; *Van Duzee* v. *United States,* 41 Fed. 571; *Mullett* v. *United States,* 150 U. S. 566, 14 Sup. Ct. 190.

An officer cannot recover extra compensation for incidental or collateral services which properly belong to or form part of the main office. An express contract to pay such extra compensation, or an express allowance of it, is void. Unless compensation by law is attached to the office, none can be recovered. Mechem on Public Officers, secs. 855, 862; *Eakin* v. *Nez Perces County,* 4 Idaho, 131, 36 Pac. 702.

Prisoners in the county jails are under the control of the board of supervisors. Rev. Stats., pars. 521, 2459, 2460.

Boards of supervisors are a creation of the statute, and their acts must find warrant in the law, either expressly or by fair implication. The power ''to direct and control prosecution of all suits to which the county is a party'' does not include power to compromise illegal claims because suit is threatened. *Merriam* v. *Barnum,* 116 Cal. 619, 48 Pac. 727.

DOAN, J.—This is an action brought by Pima County, on a complaint by the district attorney, against defendant J. B. Scott, who was the sheriff of the county, as alleged, and the other defendants, who were members of and constituted the board of supervisors of the said county, to recover from them certain sums of money which said members were alleged to have ordered paid to said Scott, as sheriff, without authority of law. Judgment was given in the court below against defendant Scott and all the members of the board for the amount thus paid, and interest and costs, and for twenty per cent of the amount as penalty. Defendants appeal, and assign as errors that the court erred in finding the issues for the plaintiff and in holding that the evidence sustained the judgment.

The record shows that, on the several dates as given, defendant Scott presented to the said board of supervisors his demands against Pima County, as follows:—

"July 3rd, 1894.   J. B. Scott, care U. S. prisoners.
    For services in caring for U. S. prisoners during the fourth quarter of 1893 .............. $168 35
"Oct. 1st, 1894.   To care of thirty-seven U. S. prisoners during the second quarter of A. D. 1894 (eight hundred and sixty days' care, at 35 cents per day) ...................·...... 301 00
"Dec. 24th, 1894.  To care of U. S. prisoners during the third quarter of 1894 ............·...... 254 00"

These demands were examined and allowed by said board, and ordered paid out of the county treasury; and thereafter, and prior to the institution of this action, the same were, on presentation, and by virtue of said order, paid out of the county treasury.   The testimony of defendant Scott was, that "These demands were not for meals furnished prisoners. They were for services in caring for prisoners under an agreement with the board of supervisors.   The U. S. prisoners were fed by the county by contract.   No distinction was made as to the feeding between U. S. prisoners and other prisoners. They were fed by the same contract, without any distinction."   The record shows the following entry on the minute book of the board of supervisors:  "On motion, all members voting 'Aye,' it is ordered that the sheriff of this county be allowed the sum of thirty-five cents per day for care of United States prisoners; such claims to be audited and allowed only upon payment by the United States for such care."   The record further shows that before defendant Scott was elected sheriff a representative of the department of justice of the United States entered into a contract with Pima County as follows:  "In the matter of boarding, guarding, and caring for persons and prisoners confined in the county jail of Pima County under any order or process in the United States courts:  Now comes Major Frank Strong, general agent department of justice, United States, and asks a reduction from the prices heretofore charged; and, the matter being considered by the board, it is ordered (all members voting 'Aye') that from and after December 1, 1888, until terminated by either party hereto, all persons serving sentence or awaiting

trial, persons detained by the government as witnesses, and all persons incarcerated by order of the U. S. court on any process whatever, shall be guarded, boarded, and cared for by the county of Pima, furnished with blankets, medical treatment by the county physician, and medicine, for the sum of one dollar per day for each person.''

It is urged by the appellants that the Revised Statutes of the United States (sec. 5547) authorizes the attorney-general to contract with no one but the sheriff for the care, keeping, imprisonment, subsistence, and proper employment of United States prisoners, as the sheriff is the manager of the jail, and is the only person authorized by law to control such prisoners. This position is untenable, but, if sustained, would not avail to defeat this action. On this subject the United States Revised Statutes provide:—

''Sec. 5539. Whenever any criminal convicted of any offense against the United States is imprisoned in the jail or penitentiary of any state or territory, such criminal shall in all respects be subjected to the same discipline and treatment, as convicts sentenced by the courts of the state or territory in which such jail or penitentiary is situated; and while so confined therein shall be exclusively under the control of the officers having charge of the same under the laws of such state or territory.''

''Sec. 5547. The attorney-general shall contract with the managers or proper authorities having control of such prisoners, for the imprisonment, subsistence, and proper employment of them, and shall give the court having jurisdiction of such offenses notice of the jail or penitentiary where such prisoners will be confined.''

The Revised Statutes of Arizona provide:—

''Par. 397. The boards of supervisors in their respective counties have jurisdiction and power . . . to provide for the care and maintenance of the indigent sick, or the otherwise dependent poor of the county; . . . to purchase, receive by donation, or lease any real or personal property necessary for the use of the county prison; take care of, manage and control the same; . . . to cause to be erected and furnished a courthouse, jail, hospital, and such other public buildings as may be necessary . . . and to construct and establish a branch jail, when deemed necessary, at a point distant from the county seat.

"Par. 398.    The supervisors must contract for all supplies for county institutions."

"Par. 2459.    Persons confined in the county jail under a judgment of imprisonment rendered in a criminal action or proceeding, may be required by an order of the board of supervisors to perform labor on the public works or ways in the county.

"Par. 2460.    The board of supervisors making such order may prescribe and enforce the rules and regulations under which such labor is to be performed."

"Par. 521.    The sheriff may, under the direction of the board of supervisors, employ convicts who have been sentenced to imprisonment in the county jail at some labor or occupation for hire or otherwise, and shall account to the board of supervisors for any moneys received for convict labor, and pay the same to the treasurer of the county."

"Par. 1972.    Sheriffs shall receive the following fees: For traveling, . . . collecting money, . . . ; for . . . and doing all other public business not otherwise provided for, the sheriff shall receive such sum as may be allowed by the board of supervisors, not to exceed annually, $500.00.    To be paid out of the county treasury upon the order of said board of supervisors. . . . For the safe-keeping of prisoners confined in jail or under guard, the sheriff shall be allowed to employ a jailer, whose compensation shall be fixed by the board of supervisors.    For each guard necessarily employed in the safe-keeping of prisoners the board of supervisors shall allow such compensation as it deems proper."

These provisions of the statutes show that the supervisors are the authorities that have the control and management of the United States prisoners, so far as providing a jail for their confinement, jailers and guards for their safe-keeping, food, beds and bedding, medicines and medical attendance for them when sick, and their performance of labor when required, and are the proper parties to receive the proceeds of such labor, when any are realized, and would indicate that the supervisors of the county were the proper persons with whom the department of justice should make the contract. The fact that the department of justice has placed this construction upon the statute, and that it has been followed for many years, without any attempt of any other department of

the government to question its correctness, would bring the
case within the rule generally recognized by our courts, that
"the contemporaneous construction of a statute by those
charged with its execution, especially when it has long pre-
vailed, is entitled to great weight, and should not be dis-
regarded or overturned except for cogent reasons, and unless
it be clear that such construction is erroneous." *United*
*States* v. *Johnston,* 124 U. S. 236, 8 Sup. Ct. 446, 31 L. Ed.
389; *Robertson* v. *Downing,* 127 U. S. 607, 8 Sup. Ct. 1328,
32 L. Ed. 269; *United States* v. *Hill,* 120 U. S. 169, 7 Sup. Ct.
510, 30 L. Ed. 627; *United States* v. *Philbrick,* 120 U. S. 52,
7 Sup. Ct. 413, 30 L. Ed. 559; *Brown* v. *United States,* 113
U. S. 568, 5 Sup. Ct. 648, 28 L. Ed. 1079; *Hahn* v. *United
States,* 107 U. S. 402, 2 Sup. Ct. 494, 27 L. Ed. 527; *United
States* v. *Moore,* 95 U. S. 760, 24 L. Ed. 588; *Edwards's
Lessee* v. *Darby,* 12 Wheat. 206, 6 L. Ed. 603.

If, however, the construction were sustained, that the
sheriff, by virtue of his being in charge of the jail and having
the control of the prisoners, was the proper one for the de-
partment to contract with, it would not avail to defeat this
action; for this change in the interpretation would only sub-
stitute him for the board of supervisors as a representative
of the county, and the money would go through his hands
into the county treasury. The United States only pays for
the support of the prisoners. Since the amendment to para-
graph 2457 of the Revised Statutes of Arizona by the act of
March 19, 1891, the county furnishes such support. Before
that time the sheriff provided the prisoners with necessary
food, clothing, and bedding, for which he was allowed a rea-
sonable compensation. Under that law the payment for the
prisoners' support would properly have gone to the sheriff,
whether the contract had been made by the department of
justice with him or with the board of supervisors. But after
the amendment of March 19, 1891, by which the county fur-
nished the food, clothing, bed, bedding, medicine, and medical
attendance out of the county treasury, the money paid by
the United States would go into the county treasury, regard-
less of who may have been the representative of the county
with whom the contract was made. It is undisputed (being
established by the testimony of the defendant Scott) that the
claim in this case was for "services in caring for U. S. prison-

ers," and that their support, including board, bedding, and medical attendance, was furnished by the county, without expense to the sheriff. The decision, therefore,—*In re Kays,* (D. C.) 35 Fed. 288,—that the United States, under the statute quoted, is obliged "to pay a just and reasonable compensation for such support, and nothing more," and that when that is paid or tendered it is the sheriff's duty to receive and keep such prisoners without any further pay, is conclusive of this question.

The point is raised in appellants' brief that paragraphs 2444 and 2457 of the Revised Statutes of Arizona apply only to prisoners committed under territorial laws, and that the right and duty of the sheriff to receive and keep United States prisoners must be derived from paragraph 2447 of the Revised Statutes of Arizona and section 5547 of the Revised Statutes of the United States, and that these authorize him to make the contract and keep the funds paid thereunder, as an emolument of his office. It is urged that, being responsible to the United States courts for the United States prisoners, the sheriff is, to some extent, a United States officer. It was decided by Mr. Justice Story in *Randolph* v. *Donaldson,* 9 Cranch, 86, 3 L. Ed. 665, that "For certain purposes and to certain intents the state jail, lawfully used by the United States, may be deemed to be the jail of the United States, and the keeper to be a keeper of the United States. The sheriff is, in law, the keeper of the county jail, and the jailer is his deputy, appointed and removed at his pleasure." If we consider him as a United States officer, we find the manner in which the United States statutes contemplate cases of this kind plainly and distinctly set forth in section 1765 of the Revised Statutes of the United States: "No officer in any branch of the public service, or any other person whose salary, pay or emoluments are fixed by law or regulations, shall receive any additional pay, extra allowance or compensation, in any form whatever, for the disbursement of public money, or for any other service or duty whatever, unless the same is authorized by law, and the appropriation therefor explicitly states that it is for such additional pay, extra allowance or compensation." Mr. Justice Brewer quoted this statute in a case similar to this, and said: "At the most, it can only be regarded as extra service cast upon him as an officer of the

government, and by reason of his official position, and as such there is no express provision of law for its compensation." *Mullett's Admx.* v. *United States,* 150 U. S. 566, 14 Sup. Ct. 190, 37 L. Ed. 1184. In commenting on this statute the United States supreme court said in *Hoyt* v. *United States,* 10 How. 109, 13 L. Ed. 348: "It cuts up by the roots these claims by public officers for extra compensation on the ground of extra services. There is no discretion left in any officer or tribunal to make the allowance, unless it is authorized by some law of Congress. The prohibition is general, and applies to all public officers, or quasi-public officers, who have a fixed compensation." In *United States* v. *Saunders,* 120 U. S. 126, 7 Sup. Ct. 467, 30 L. Ed. 594, in delivering the opinion of the court, Mr. Justice Miller said of this act: "The purpose of this legislation was to prevent a person holding an office or appointment, for which the law provides a definite compensation by way of salary or otherwise, which is intended to cover all the services which as such officer he may be called upon to render from receiving extra compensation, additional allowances, or pay for other services which may be required of him, either by act of Congress or by order of the head of his department, or in any mode added to or connected with the regular duties of the place which he holds." We think that the construction given to this statute in these cases is conclusive against any claim of the appellant in the case at bar, as based upon the United States statutes.

When we examine the provisions of the Arizona statutes upon this subject, we find: Paragraph 496: "The sheriff must . . . take charge of and keep the county jail and the prisoners therein." Paragraph 2457, as amended by the act of March 19, 1891: "The sheriff must receive all persons committed to the county jail of his county." Paragraph 2447: "The sheriff must receive and keep in the county jail any prisoner committed thereto by process or order issued under the authority of the United States until he is discharged according to law, as if he had been committed under process issued under the authority of this territory; provision being made by the United States for the support of such prisoner." Paragraph 1972, after enumerating the fees, mileage, per diem, and pay for various services allowed to the sheriff, provides: "For . . . and doing all other public business not

otherwise provided for, the sheriff shall receive such sum as
may be allowed by the board of supervisors, not to exceed
annually $500.00. To be paid out of the county treasury
upon the order of said board of supervisors." The last pro-
vision quoted is the only legislative act that refers or applies
to pay for his keeping the jail or the prisoners therein, and
as that service is "public business," and is "not otherwise
provided for," the provision quoted does cover it completely,
and constitutes payment in full for that service. As the stat-
ute provides that he shall receive United States prisoners as
if committed under process of the territory, it means that as
he must receive and keep territorial prisoners without any
distinct pay therefor, beyond the salary provided in the law
for "doing all other public business not otherwise provided
for," he must likewise receive and keep United States prison-
ers without any further pay than that provided by the law
just quoted. The territorial and state courts, without ex-
ception, have held that in such cases the courts can give no
pay to public officers beyond that provided by the legislature.
*Stockton* v. *County of Shasta,* 11 Cal. 113; *Board* v. *Bransom,*
4 Colo. App. 274, 35 Pac. 750; *Eakin* v. *Nez Perces County,*
4 Idaho, 131, 36 Pac. 702. No provision of the statutes of
Arizona authorizes the payment to the sheriff for "caring for
prisoners," whether United States prisoners or others. "To
keep the county jail and the prisoners therein" is the statu-
tory duty of the sheriff. He accepted the office burdened with
the charge of the jail and the prisoners therein as one of its
duties. The duty of receiving and keeping in the county jail
any United States prisoner, as if he were a territorial pris-
oner, is a service cast upon the sheriff by paragraph 2447 of
the Revised Statutes, as sheriff, "by reason of his official
position, and there is no express provision of law for its com-
pensation." Where no compensation is by law attached to
the office, the officer can recover none. Where a compensation
is provided by law for an officer, it is conclusive, and the
officer can recover nothing beyond it. The payment, there-
fore, of the demands in question was without authority of
law.

This action was brought under act 34 of the eighteenth
legislature, approved April 3, 1893, which reads as fol-
lows:—

"An act to amend paragraph No. 383, Revised Statutes of the Territory of Arizona.

"Be it enacted by the legislative assembly of the territory of Arizona:

"Section 1.   That paragraph No. 383, of the Revised Statutes of the Territory of Arizona, be and the same is hereby amended to read as follows: 'Paragraph No. 383. Its powers can be exercised only by the board of supervisors or by lawful agents and officers acting under their authority and authority of law.   Provided, however, that whenever any board of supervisors shall without authority of law, order any money paid out of the county treasury for salary, fees, or for any other purpose, such supervisors and the party or parties in whose favor such order shall have been made, shall be responsible for all such sums of money and twenty per cent additional thereon, to be recovered as follows: The district attorney of such county is hereby empowered and it is hereby made his duty to institute suit in the name of his county against such supervisors and others or any number of them to enjoin the payment of such money (or in case the same shall have been paid, then to recover the same), with twenty per cent and lawful interest and costs, and when such district attorney is paid by fees, he shall receive said sum of twenty per cent, otherwise it shall be covered into the county treasury to the credit of the fund from which the order of allowance was made.   And the court shall give judgment accordingly, and for interest and costs as in other cases.   And such board shall have no power to dismiss, compromise or in any way control any suit instituted under the provisions of this section.   And no bond shall be required of a county in such action, whether for costs or to obtain an injunction.   Provided, further, that if any such district attorney shall for twenty (20) days, after request made by any taxpayer of such county, in writing, fail to institute such suit, then any taxpayer of such county may institute such suit in his or her own name and at his or her own cost, with the same effect as if such suit had been brought by the district attorney.   Provided, the person or persons instituting such action or suit shall execute a bond with two or more good and sufficient sureties, made payable to the defendant or defendants in such suit or action, conditioned that if the plaintiff or plaintiffs in such

action shall fail to prosecute such suit or action with dili-
gence and to effect, that the plaintiff or plaintiffs will pay all
damages sustained by the defendant or defendants by reason
of such suit or action and all costs incurred therein.   And if
such taxpayer shall prevail in such suit, the court shall allow
such taxpayer costs and a reasonable attorney fee, not to ex-
ceed forty per cent of the amount recovered or saved to the
county, as the case may be.   And provided further, that any
supervisor may relieve himself from responsibility under the
provisions of this law by dissenting from such order and
having his dissent entered on the minutes of the board at the
time.'

"Sec. 2.   All acts and parts of acts in conflict with the
provisions of this act are hereby repealed.

"Sec. 3.   This act shall take effect and be in force from and
after its passage."

Paragraph 383 of the Revised Statutes originally read:
"Its powers can only be exercised by the board of super-
visors, or by agents and officers acting under their authority,
or authority of law; provided, however, that whenever any
board of supervisors shall, without authority of law, order
any money paid as a salary, fees, or for other purposes, and
such money shall have actually been paid, the district attor-
ney of such county is hereby empowered, and it is hereby
made his duty, to institute suit in the name of the county,
against such person or persons, to recover the money so paid,
and twenty per cent damage for the use thereof, and no order
of the board of supervisors therefor shall be necessary in
order to maintain such suit; and provided further, that when
the money has not been paid on such orders, it is hereby made
the duty of the district attorney of such county to commence
suit, in the name of the county, for restraining the payment
of the same, and no order of the board of supervisors therefor
shall be necessary in order to maintain such suit.   A county
shall not be required to give any bonds in any action, nor in
order to obtain an injunction."   Paragraph 411, which was
likewise affected by act 34, read: "Every officer, including
each supervisor, who shall draw an unauthorized warrant,
claim, or demand upon any county treasury in this territory,
contrary to or without the authority of law, shall be liable
to the county on his official bond personally and for the

amount thus directly paid out or disbursed on such warrant, claim, or demand, and the same may be recovered by an action against the person or persons so liable therefor, jointly or severally. It shall be the duty of the district attorney of the county to see that suit is brought in the proper cases for the enforcement of the provisions of this section. The vote of each supervisor upon every question, order, or matter acted on by them shall be recorded in the minutes of the board.''

It is urged by the appellants that the defendants Avery, Samaniego, and Finley passed upon the demands in question in their official capacity; that their action was a judicial determination, arrived at from their view of the rights of the claimant, Scott, and the liability of Pima County for the amount claimed; that even if their decision was erroneous, and their allowance therefore no defense on the part of Scott, who received the money (on the ground that the act of a public officer in disposing of public money is void when beyond his authority or unsupported by the law, and no defense in behalf of the recipient thereof in an action against him for its recovery), nevertheless, as to them, for the reasons given above, the act should be construed to require that they knew or had means of knowing that the claim was invalid, and that their allowance was in bad faith, or by reason of culpable negligence in not having informed themselves of the plain provisions of the law,—in other words, that the penal provisions of this act should be construed to apply to the super-visors only in cases of violation of the plain provisions of the law, and not to cases involving the decision of intricate legal controversies, when well-informed men, exercising reasonable care and research, are liable to err. This is urged on the ground that any other construction would be unreasonable; that the supervisors owe it to the public to give to the duties of their office their best efforts and ability,—an honest determination of, and an earnest investigation into, the county affairs that come to their hands,—but that they cannot be expected to be infallible; and that it would be unjust to hold them liable for the pecuniary damages that might result from an honest mistake, in cases where their position compels them to decide upon contested legal rights or liabilities. This view of the case is plausible. It would seem reasonable to recognize a difference between a man who presents and presses a de-

mand of questionable legality, and who receives from the
county the money thereon, to which subsequent adjudication
decides him not to have been legally entitled, and the super-
visors, who, in the line of official duty, are obliged to pass
upon the claim, and who allow it because its rejection would
subject the county to the expense of litigation, and they
believe, on reasonable ground, that the claim is legal, and
would, if rejected, be collected with costs by suit of law, and
who are guided in their determination by an examination
of the law as it appears to them, and the advice of
the district attorney of the county, who is by law con-
stituted their legal adviser. But there is no ground for
construction. The act is plain and unmistakable in its lan-
guage. Moreover, we had, prior to its enactment, a stat-
ute that affords the relief suggested. To attempt to place
that construction on this act would be to deny the neces-
sity of it. Before the passage of the act in question, para-
graph 383 of the Revised Statutes gave the recourse men-
tioned, against the recipient of money allowed without
authority of law, for the amount received, and the twenty per
cent penalty; 'and paragraph 411 of the Revised Statutes
gave recourse against the supervisors or other county officers
who should draw an unauthorized warrant, claim, or demand
contrary to, or without the authority of law, and made it the
duty of the district attorney to see that these provisions were
enforced by suit. The act of April 3, 1893, was enacted to
amend the law as it then existed. Its only office—the only
reason for its enactment—is to repeal, so far as supervisors
are concerned, the provisions of paragraph 411, take them out
of the more lenient and considerate provisions therein con-
tained, and place them under the former provisions of para-
graph 383, in exactly the same position as the man who
presents the demand and receives the money. It does this in
language too plain to be misunderstood,—too distinct and
explicit to warrant any attempt at construction. The fact
that it makes the supervisors warrant their infallibility, and
indemnify the county against the result of any error they
may commit, however excusable or unavoidable it may be, or
however honest or diligent they may have been in the matter,
does not enable the court to afford them any relief when
proceeded against under this act. When an act is plain and

unambiguous, and if free from objection on constitutional grounds, the courts are bound to apply and enforce it, notwithstanding objections to its policy. *Leonard* v. *Wiseman,* 31 Md. 201. Nor can courts set aside a statute merely because it is absurd or unreasonable (*Steamboat Co.* v. *Foster,* 5 Ga. 194, 48 Am. Dec. 248) ; nor because it is unwise (*Merchants' etc. Barb-Wire Co.* v. *Brown,* 61 Iowa, 275, 20 N. W. 434). "Nor can a court declare a statute unconstitutional and void solely on the ground of unjust and oppressive provisions, or because it is supposed to violate the natural, social, or political rights of citizens, unless it can be shown that such injustice is prohibited, or such rights guaranteed or protected by the constitution. Except where the constitution has imposed limits upon the legislative power, it must be considered as practically absolute, whether it operate according to natural justice or not in any particular case. The courts are not the guardians of the rights of the people, except as those rights are secured by some constitutional provision which comes within the judicial cognizance. The protection against unwise or oppressive legislation, within constitutional bounds, is by an appeal to the justice and patriotism of the representatives of the people. If this fail, the people in their sovereign capacity can correct the evil, but courts cannot assume their rights. While the parliament of Britain possesses completely the absolute and uncontrolled power of legislation, the legislative bodies of the American states possess the same power, except—first, as it may have been limited by the constitution of the United States; and second, as it may have been limited by the constitution of the state. A legislative act cannot, therefore, be declared void unless its conflict with one of these two instruments can be pointed out." Cooley on Constitutional Limitations, 164 et seq. As there is nothing in the act in question directly in conflict with any express provision of the constitution of the United States or the Organic Act of the territory, the courts are powerless to protect the supervisors against the penalties it pronounces, however unjust or oppressive they may be. The judgment of the district court is therefore affirmed

Street, C. J., and Sloan, J., concur.