COUNTY OF BAY *v.* MARVIN.

SAME *v.* SAME.

PRISONS—SHERIFFS—SHERIFF IN KEEPING FEDERAL PRISONERS NOT
ACTING AS SHERIFF.

Under 1 Comp. Laws 1915, §§ 2522, 2525, 2526, 2529, Act No. 67,
Pub. Acts 1927, and section 5547, Rev. Stat. U. S. (18 USCA,
§ 699), the sheriff, in keeping and caring for Federal prison-
ers committed to county jail, is not acting as sheriff, but as
jailer of United States, and therefore county has no interest
in money paid him for boarding such prisoners, and may not
recover amount so received by him in excess of rate established
in county to be paid him for feeding State prisoners.

Error to Bay; Gillespie (Glenn C.), J., presiding.
Submitted June 4, 1929. (Docket Nos. 27 and 28,
Calendar Nos. 34,360 and 34,359.) Decided July 8,
1929. Rehearing denied September 4, 1929.

Assumpsit by the County of Bay against Ezra
Marvin, principal defendant, and the Michigan
Surety Company, surety. Assumpsit by the same
plaintiff against the same principal defendant and
the Ætna Casualty and Surety Company, surety.
The cases were consolidated and from directed ver-
dicts and judgments for plaintiff, defendants bring
error. Reversed and judgments entered for defend-
ants.

*Frank C. Patterson,* Special Assistant Prosecut-
ing Attorney, for plaintiff.

*Collins & Thompson,* for defendant Ezra Marvin.

*Weadock & Weadock,* for defendant Ætna Cas-
ualty & Surety Company.

*Thomas, Shields & Silsbee,* for defendant Michigan Surety Company.

CLARK, J. Defendant Marvin was sheriff of the county of Bay. In his first term of office defendant Ætna Casualty and Surety Company was surety on his official bond, and in his second term defendant Michigan Surety Company was surety. Federal prisoners were committed to the jail from time to time, for the board of whom the sheriff was paid 75 cents a day by the United States, in accordance with an agreement between the sheriff and the Federal government covering the matter. For the keeping of State prisoners the sheriff was paid by the county 15 cents per meal.

In these two suits instituted against the sheriff and his sureties the county seeks to recover of the sheriff and his sureties the amount received by him from the United States in excess of the rate established in the county to be paid to the sheriff for feeding State prisoners. The suits were consolidated. Both sides moved for directed verdicts, which were directed for plaintiff and judgments entered thereon. Defendants bring error.

The judgments must be reversed. In the receiving, keeping, and caring for prisoners of the United States committed to the county jail, the sheriff was not a sheriff, but a jailer of the United States.

It is said in *Ex parte Shores* (D. C.), 195 Fed. 627:

"The several States may, no doubt, refuse to allow the use of their jails and prisons for such purpose; and, should they do so, the United States could not lawfully commit persons to such jails, and the jailers would not be required to receive them.

"But congress at its first session, and on September 23, 1789, adopted a resolution requesting the

legislatures of the several States to pass laws, making it the duty of the keepers of their jails to receive and safely keep therein under the same penalties as in the case of State prisoners all prisoners committed under the authority of the United States until they shall be discharged by due course of the laws thereof, the United States, however, to pay for the keeping and support of such prisoners as they shall commit to such jails. 1 Stat. 96.''

Michigan complied with the request of congress. 1 Comp. Laws 1915, § 2522, provides:

''SECTION 1. The common jails in the several counties in the charge of the respective sheriffs shall be used as prisons:

''*First,* For the detention of persons charged with offenses and duly committed for trial;

''*Second,* For the confinement of persons committed pursuant to a sentence upon conviction of an offense, and of all other persons duly committed for any cause authorized by law; and the provisions of this section shall extend to persons detained or committed by the authority of the courts of the United States, as well as the courts and magistrates of this State.''

And see Act No. 67, Pub. Acts 1927.

The law of the State made the jail a place for detaining prisoners committed by the authority of the courts of the United States. See 1 Comp. Laws 1915, §§ 2525, 2526, and 2529. Section 5547, Rev. Stat. U. S. (18 USCA § 699), provides:

''The attorney-general shall contract with the managers or proper authorities having control of such prisoners, for the imprisonment, subsistence, and proper employment of them, and shall give the court having jurisdiction of such offenses notice of the jail or penitentiary where such prisoners will be confined.''

And it was in compliance with such statute and in acceptance of the statute of this State that the agreement with the sheriff for keeping Federal prisoners was made. If the sheriff, while acting as jailer of the United States, violates the order of commitment respecting escape (*United States* v. *Hoffman* [D. C.], 13 Fed. [2d] 269; *Ex parte Shores, supra*); cruel and unusual punishment (*In re Birdsong* [D. C.], 39 Fed. 599 [4 L. R. A. 628]); or otherwise, he is answerable as such jailer to the Federal court. See *Randolph* v. *Donaldson,* 9 Cranch, 76; *In re O'Rourke* (D. C.), 251 Fed. 768.

In the cited case, *In re Birdsong, supra,* the legislature of Georgia had passed a statute for keeping Federal prisoners in the jails of the State, and it was held in that case:

"Is it a lawful use to commit the prisoners of the United States to the State jail? Undoubtedly, for the Code of Georgia, § 359, so declares. Then the jail of Bibb county, Ga., is lawfully a jail of the United States, and the jailer, Nat Birdsong, is the jailer of the United States for the purpose of receiving, keeping, and properly treating prisoners of the United States; and it may be remarked that the services which the respondent renders his country in behalf of its prisoners are by no means gratuitous. It is then clearly apparent that, as to United States prisoners committed to his custody, by the order and sentence of this court, commanded as he is, to receive them by the law of Georgia and of the United States, and paid, as he is, for these services, the respondent is a jailer of the United States."

That the sheriff was the proper party under section 5547 above with whom the contract was to be made, and that the moneys paid to him as a jailer of the United States were not public funds of the

county, but belonged to the sheriff as such jailer, he having under the contract provided subsistence for the prisoners, is well stated in *Majors* v. *Lewis and Clark County,* 60 Mont. 608 (201 Pac. 268):

"From these considerations it follows as of course that the sheriff is the proper party with whom the contract is to be made for the subsistence of persons committed to the jail by Federal authority, and this is the conclusion reached by the courts which have been called upon to construe statutes similar to our own. *In re Kays* (D. C.), 35 Fed. 288; *Avery* v. *Pima County,* 7 Ariz. 26 (60 Pac. 702). It is altogether immaterial that in this instance the contract was made in the name of Lewis and Clark county. It inured to the benefit of the plaintiff (sheriff). The funds received from the United States were not in any sense public funds and had no place in the county treasury. They were received to the use of the plaintiff, to whom they belonged under the contract and upon whom the burden was imposed to provide subsistence for the person so incarcerated."

The above case also answers the argument that the county ought not to furnish the use of its jail without compensation:

"Since Lewis and Clark county is but a political subdivision of the State and subject to legislative supervision and control, * * * it is bound by the statute, and cannot complain that it is required to furnish the use of its jail, without compensation, for the accommodation of the general government."

It follows that judgments are reversed, with costs to defendants, and, as the question is of law, remanded with directions to enter judgments for defendants.

NORTH, C. J., and FEAD, FELLOWS, WIEST, McDONALD, POTTER, and SHARPE, JJ., concurred.