BOARD OF COM'RS OF TULSA COUNTY v. MARS, Sheriff.

No. 29697.    Sept. 23, 1941.

*117 P. 2d 129.*

Dixie Gilmer, County Atty., and John F. Conway, Asst. County Atty., both of Tulsa, for plaintiff in error.

Moss & Young, of Tulsa, for defendant in error.

OSBORN, J. The board of county commissioners of Tulsa county, hereinafter referred to as plaintiff, instituted this action in the district court of Tulsa county against A. Garland Mars, sheriff of Tulsa county, hereinafter referred to as defendant, as an action in mandamus to compel defendant to account to the county for certain funds received by him by way of profits for the feeding of federal prisoners confined in the county jail of Tulsa county. The alternative writ was issued, defendant filed his return and answer to the petition; the cause was tried to the court and a judgment was entered in favor of defendant, from which plaintiff has appealed.

Plaintiff alleged that defendant, as sheriff of Tulsa county, had entered into a contract with the Department of Justice of the United States of America by the terms of which the government agreed to pay 70 cents per day for the feeding, care, housing, and upkeep of all federal prisoners incarcerated in the Tulsa county jail. It was alleged that the actual cost of feeding the prisoners is 35 cents per day per prisoner; that defendant should not be permitted to make a profit upon the keeping and maintaining of prisoners in the county jail, and any profit so accruing was the property of the county and not the property of defendant.

The allegations of fact are admitted by defendant, but he contends that the funds in his hands representing profits from the feeding of federal prisoners are his property and not the property of the county.

When the cause came on for trial it was stipulated that the question of whether or not mandamus was the proper remedy would not be raised.

It appears that the question thus presented has never been before this court.

In other jurisdictions the authorities disclose considerable divergence of opinion on the question. The statutes authorizing the confinement of federal prisoners in the county jails were enacted as sections 1 and 2, chapter 19, Session Laws 1910-11 (3319-3320, O. S. 1931, 57 Okla. St. Ann. § 16) and are as follows:

"The provisions of the Act of Congress, approved June 25, 1910, providing 'That the Attorney General of the United States in his discretion is hereby authorized to convey unto the city of Muskogee, Oklahoma, the federal jail at that city, and all lands set apart therewith for the use of the federal government, and convey unto the county of Craig, Oklahoma, the federal jail at Vinita, Oklahoma, and all lands set apart therewith for the use of the federal government, and convey unto the county of Pittsburg, Oklahoma, the federal jail at McAlester, Oklahoma, and all lands set apart therewith for the use of the federal government, and convey unto the county of Carter, Oklahoma, the federal jail at Ardmore, Oklahoma, and all lands set apart therewith for the use of the federal government; provided, that the properties hereinbefore mentioned shall not be so conveyed by the Attorney General until the United States is reimbursed the amount found to be due said United States for the support of Oklahoma prisoners by United States marshals in the United States jails in Oklahoma from November 16, 1907, to the date of the passage of this act, and until Oklahoma, by legislative enactment, has made provisions making it the duty of the keepers of all jails in Oklahoma to receive and safe keep therein all persons committed under the authority of the United States upon the same terms and conditions, and under the like penalties as in the case of prisoners committed under authority of said state', be, and the same is hereby accepted."

"When a prisoner shall be delivered to a sheriff or keeper of any jail by the authority of the United States, the sheriff or keeper shall receive the prisoner, and commit him accordingly; and every sheriff or keeper of the jail refusing or neglecting to take possession of a prisoner delivered to him by the authority aforesaid, shall be subject to the same pains and penalties as for neglect or refusal to commit any prisoner delivered to him under the authority of the state. And any sheriff or keeper of any jail who shall suffer to escape any prisoner committed to his custody by the authority of the United States, shall be subject to the same pains and penalties as for suffering to escape any prisoner committed to his custody under the authority of the state, and the allowance for the maintenance of any prisoner committed as aforesaid shall be no greater than that made for prisoners committed under the authority of the state."

Section 3322, O. S. 1931, 57 Okla. St. Ann. § 17, provides:

"The United States shall be liable to pay for the support and keeping of said prisoners the same charges and allowances as are allowed for the support and keeping of prisoners committed under authority of this state."

Section 2, chapter 11, Session Laws 1933, in part, provides:

"Each sheriff shall also be paid by the county the actual expenses necessarily incurred by him in keeping, feeding and maintaining prisoners, not to exceed fifty cents per day for each prisoner, upon his duly verified, itemized claim against his county for such expenses, which said claim shall be filed with and allowed by the board of county commissioners as other claims, and he shall receive no other compensation for said services."

There are no decided cases involving a construction of our statutes or statutes quite similar. However, certain cases may be helpful in our consideration of the question involved.

In the case of Bay County v. Marvin, 247 Mich. 529, 226 N. W. 247, there was involved a construction of statutes similar to our own, the question raised being identical with the question herein involved. Therein it was said:

"The law of the state made the jail a place for detaining prisoners committed by the authority of the courts of the United States. See sections 2525, 2526, and 2529, Comp. Laws 1915. Section 5547, Rev. St. U. S. (18 U. S. C. A. sec. 699) provides:

" 'The attorney-general shall contract with the managers or proper authorities having control of such prisoners, for the imprisonment, subsistence, and proper employment of them, and shall give the court having jurisdiction of such offenses notice of the jail or penitentiary where such prisoners will be confined.'

"And it was in compliance with such statute and in acceptance of the statute of this state that the agreement with the sheriff for keeping federal prisoners was made. If the sheriff, while acting as jailer of the United States, violates the order of commitment respecting escape, U. S. v. Hoffman (D. C.) 13 F. (2d) 269; Ex parte Shores, supra, cruel and unusual punishment; In re Birdsong (D. C.) 39 F. 599, 4 L. R. A. 628, or otherwise, he is answerable as such jailer to the federal court. See Randolph v. Donaldson, 9 Cranch, 76, 3 L. Ed. 662; In re O'Rourke (D. C.) 251 F. 768.

"In the cited case, In re Birdsong, supra, the Legislature of Georgia had passed a statute for keeping federal prisoners in the jails of the state, and it was held in that case:

" 'Is it lawful use to commit the prisoners of the United States to the state jail? Undoubtedly, for the Code of Georgia (1882) sec. 359, so declares. Then the jail of Bibb county, Ga., is lawfully a jail of the United States, and the jailer, Nat Birdsong, is the jailer of the United States for the purpose of receiving, keeping, and properly treating prisoners of the United States; and it may be remarked that the services which the respondent renders his country in behalf of its prisoners are by no means gratuitous. It is then clearly apparent that, as to United States prisoners committed to his custody, by the order and sentence of this court, commanded, as he is, to receive them by the law of Georgia, and of the United States, and paid, as he is, for these services, the respondent is a jailer of the United States.'

"That the sheriff was the proper party under section 5547 above with whom the contract was to be made, and that the moneys paid to him as a jailer of the United States were not public funds of the county, but belonged to the sheriff as such jailer, he having under the contract provided subsistence for the prisoners, is well stated in Majors v. Lewis & Clark County, 60 Mont. 608, 201 P. 268:

" 'From these considerations it follows of course that the sheriff is the proper party with whom the contract is to be made for the subsistence of persons committed to the jail by federal authority, and this is the conclusion reached by the courts which have been called upon to construe statutes similar to our own. In re Kays (D. C.) 35 F. 288; Avery v. Pima County, 7 Ariz. 26, 60 P. 702. It is altogether immaterial that in this instance the contract was made in the name of Lewis and Clark county. It inured to the benefit of the plaintiff (sheriff). The funds received from the United States were not in any sense public funds and had no place in the county treasury. They were received to the use of the plaintiff to whom they belonged under the contract and upon whom the burden was imposed to provide subsistence for the persons so incarcerated.'

"The above case also answers the argument that the county ought not to furnish the use of its jail without compensation:

" '. . . Since Lewis and Clark county is but a political subdivision of the state and subject to legislative supervision and control, . . . it is bound by the statute and cannot complain that it is required to furnish the use of its jail, without compensation, for the accommodation of the general government.' "

In the case of Holland v. Fayette County, 240 Ky. 37, 41 S. W. 2d 651, the court refused to follow the above-quoted authority and reached a contrary conclusion. Therein it was said:

"The money received by such a jailer, where the jailer is on a salary, and the effect of section 246 of the Kentucky Constitution is to put Kentucky jailers on a salary not exceeding $5,000, belongs not to the jailer, but to the county in whose jail the prisoner is kept. Los Angeles County v. Cline, 185 Cal. 299, 197 P. 67; Avery v. Pima County, 7 Ariz. 26, 60 P. 702; Board of Freeholders v. Kaiser, 75 N. J. Law, 9, 69 A. 25; Adams, Sheriff, v. Maricopa County, 16 Ariz. 418, 145 P. 884; King County v. Stringer et al., 130 Wash. 287, 227 P. 17;

342

Binford, Sheriff, v. Harris, County Secretary (Tex. Civ. App.) 261 S. W. 535; Orndorff, Sheriff, et al. v. El Paso County et al. (Tex. Civ. App.) 295 S. W. 219. The United States Supreme Court denied a writ of certiorari in this case. See 276 U. S. 633, 48 S. Ct. 339, 72 L. Ed. 742."

In the instant case, however, there are other considerations which we deem to be of controlling importance. Evidence was presented, and it is not disputed, that since statehood the sheriffs of the various counties in this state have retained the funds derived as profits from feeding federal prisoners with the acquiescence and consent of the officers charged with administration of the fiscal affairs of the counties and the state and the right of said sheriffs to said funds has not heretofore been questioned. In answer to this proposition the county states that this only amounts to an administrative construction of these statutory provisions by the sheriffs themselves, who were interested parties, but we here point out that no board of county commissioners within the state has, since statehood, seen fit to invoke the jurisdiction of this court to determine whether or not such funds were county funds. It thus appears that a great number of administrative officers have acquiesced in this construction and that the Legislature, by its inaction, has also acquiesced therein. The Attorney General, by various written opinions, has likewise acquiesced in the construction.

In the case of Sheridan Oil Co. v. Superior Court of Creek County, 183 Okla. 372, 82 P. 2d 832, it was said:

"Acquiescence in a given construction of a statute is entitled to great weight, even if it has not been participated in by the judiciary."

See, also, the case of State ex rel. Reardon, County Attorney, v. Hooker, County Judge, 26 Okla. 460, 109 P. 527; De Hasque v. Atchison, T. & S. F. Ry. Co., 68 Okla. 183, 173 P. 73; McCain v. State Election Board, 144 Okla. 85, 289 P. 759; United States v. Johnston, 124

U. S. 236, 31 L. Ed. 389, 8 S. Ct. 446; Robertson v. Downing, 127 U. S. 607, 32 L. Ed. 269, 8 S. Ct. 1328.

For the reasons given, we are of the view that the trial court did not err in denying plaintiff relief.

The judgment is affirmed.

CORN, V. C. J., and BAYLESS, GIBSON, HURST, DAVISON, and ARNOLD, JJ., concur. WELCH, C. J., and RILEY, J., absent.