MAINTAINING PRISONERS — EXPENSES If an item claimed by the sheriff comes within the clear meaning of the words "keeping, feeding and maintaining prisoners", or is an item which has been traditionally included within the meaning of that language, it is incumbent upon the Board of County Commissioners to pay the sheriff his actual expenses when they are properly justified by receipts and other proof of payment and accompanied by the approval of the district attorney. The formula for such payment is specifically set out in Title 19 O.S. 180.43 [19-180.43](c) (1974). The language of 19 O.S. 410.8 [19-410.8] (1971) contemplates a payment by the sheriff to vendors for items used in boarding prisoners and subsequent reimbursement by the Board of County Commissioners upon submission of a proper claim accompanied by the approval of the district attorney. The county may not pay a sheriff for food on hand on the effective date of 19 O.S. 180.43 [19-180.43](c) (1974). A valid claim for the food and supplies on hand as of the effective date of the Act could only be submitted as the food and supplies are used in the feeding of prisoners in the jail and according to the formula provided by statute. The salary expense for cooks and assistants hired for the preparation of food for prisoners in county jails is not an item in includable within the meaning of the words "keeping, feeding and maintaining prisoners." Cooks and assistants hired for the purpose of preparing and serving meals to prisoners should be compensated as are other employees of the office of the sheriff. The Legislature did not intend that the expense of the feeding of the sheriff and his employees be reimbursed by the county. The statute was intended to reimburse the sheriff for his actual expenses in the feeding of prisoners and does not include the expense of feeding the sheriff or his employees. It was the intent of the Legislature in enacting 19 O.S. 180.43 [19-180.43](c) (1974) to remove the opportunity for a county sheriff to realize a profit out of the feeding of prisoners confined in the county jails of this state. To that extent, the legislative intent abrogates the language of Board of County Commissioners, Tulsa County v. Mars, Sheriff, cited supra, relating to profits realized by the sheriff. However, it is clear that the county has no interest whatsoever in the transaction between the sheriff and the federal government as to the reimbursement by the United States for the keeping of federal prisoners. To that extent, the Mars case, supra, remains viable. It is the duty of the county sheriffs of this State to follow the provisions of Title 57 O.S. 4 [57-4] (1971) and to serve each prisoner in the county jail "three times each day with wholesome food, which shall be well cooked and in sufficient quantity." The sheriff is entitled to be reimbursed his actual expenses for keeping, feeding and maintaining of prisoners on per prisoner per day basis only and it is impossible for the "amount allowable" to accumulate. The Attorney General is in receipt of your request for an opinion wherein you ask the following questions: 1. What was the intention of the Legislature in using the language "that each sheriff shall also be paid actual expenses by the county for keeping, feeding and maintaining prisoners," since many items must be taken into account in computing such actual expenses? 2. Would the food bills to be paid the vendors be filed against the sheriff's general fund appropriation account by said vendors, or would the sheriff pay the vendor and file a claim for reimbursement with the invoices and delivery tickets attached? 3. On May 11, 1974, (the effective date of Senate Bill 551, now codified as 19 O.S. 180.43 [19-180.43](c) (1974) many of the sheriffs in this State had an inventory of food and supplies for prisoners on hand; would the county be authorized to pay said sheriffs for such food and supplies then on hand? 4. Several counties in this State are required to hire a cook and assistant to prepare food for prisoners. Would the cook and the assistant's salaries be included in the daily amount that the sheriffs can receive for keeping, feeding, and maintaining prisoners, or would this be considered the same as another employee of the sheriff's office? 5. Could the sheriff or any of his employees be fed in the jail with the groceries paid for from county funds? 6. In view of the provisions of Senate Bill 551, supra, does the Attorney General now adhere to the conclusion therein expressed by the Court? (This question is accompanied by additional information which will be discussed in the body of the opinion.) 7. Is it the opinion of the Attorney General that the respective sheriffs must still comply with said requirement (57 O.S. 1971 4 [57-4]) as to feeding county prisoners incarcerated in county jails? 8. If you determine that the sheriffs should file claims for reimbursement for actual expenses of feeding, boarding and maintaining prisoners, should such claims be accompanied by receipted bills or itemized statements for groceries purchased? Your questions (9) and (10) refer specifically to the provision which authorizes a food allowance of $2.50 per day for each prisoner for the first twenty (20) prisoners, and $1.50 per day for each prisoner above twenty (20)j and the questions are as follows: 9. Is this a daily, monthly or fiscal year limitation which the sheriff can accumulate and spend; in other words, if the sheriff for the month of July spends less than the amount allowable and for the month of August spends more, could he take the two months and average them out? 10. If the answer to the ninth question is affirmative, would it follow that for any fiscal year you would take the total amount allowable against the total amount spent and average them out? Title 19 O.S. 180.43 [19-180.43](c) (1974) provides: "Each sheriff shall also be paid actual expenses by the county for keeping, feeding and maintaining prisoners not to exceed the sum of Two Dollars and Fifty Cents ($2.50) per day for each prisoner for the first twenty prisoners and One Dollar and Fifty Cents ($1.50) per day for each prisoner above twenty. The claim for such expenses, with the written approval of the District Attorney attached shall be filed with and allowed by the Board of County Commissioners as other claims, and the sheriff shall receive no other compensation for said services. The sheriff shall file a report annually with the Board of County Commissioners not later than January 15, of each year. The State Examiner and Inspector shall conduct an audit of the report as on other public records of the county." Your first question deals basically with the language included in the above section concerning the "keeping, feeding and maintaining of prisoners." A question as to the meaning of these words has surfaced periodically over the years, and while there have been several amendments to this section of the law, it seems clear that the meaning of the phrase has remained virtually unchanged. This office, in an opinion addressed to the Honorable Ralph K. Jenner, dated November 16, 1957, concluded that "blankets, sheets, medicine, and doctor bills" for prisoners were not included within the meaning of the phrase "keeping, feeding and maintaining prisoners." In arriving at that determination, the opinion stated: " . . . It is our understanding that said words have not been interpreted, by interested public officials, as having reference to medical bills and supplies, bedding and other equipment used in a jail." This issue has been resolved consistently and is embodied in the principle enunciated in the case of Crosbie v. Partridge,85 Okl. 186, 205 P.2d 58, which states: "The principle that the contemporaneous construction of a statute by the executive officers of the government, whose duty it is to execute it, is entitled to great respect, and should ordinarily control the construction of the statute by the court . . . " A similar decision was reached in Attorney General's Opinion, No. 65-337 as to whether "laundry, drugs and like expenses incident to providing for prisoners" were items coming within the purview of the statute in question. In that opinion, the Attorney General determined that said items had not been determined to be includable by the officials operating under the statute and, consequently, the items should be provided with funds from the county general fund. It is apparent from the former opinions of this office and from the case law that the items includable within the meaning of the words "keeping, feeding and maintaining prisoners" to a great extent depends upon the interpretation placed upon the language by the county commissioners and the sheriff. It would be virtually impossible to delineate every item that the Legislature intended should or should not be included within the meaning of the language. What is abundantly clear is that the Legislature intended that the sheriff be remunerated for his "actual expenses" for the care of prisoners in the county jail. The role of the district attorney in this matter must not be overlooked. Under the terms of the statute, the district attorney must approve the claim before it is submitted to the county commissioners for payment. Approval by the district attorney must be construed as a strong indication of the legitimacy and propriety of the claim. Once the claim has been approved by the district attorney, and receipts and other proof of the expenditure have been furnished and attached to the claim, the discretion of the county commissioners is extremely limited in denying the claim. If the Board of County Commissioners had some question concerning the validity of a claim, any legal advice concerning the matter would properly come from the office of the district attorney. Since, as has been mentioned above, the district attorney approves the claim prior to submission to the Board of County Commissioners, it must be assumed that in his view the claim was legitimate or, upon his perusal of it, the district attorney would have denied the claim. In any event, if the item claimed comes within the clear meaning of the words "keeping, feeding and maintaining prisoners", or is an item which has been traditionally included within the meaning of that language, it is incumbent upon the Board of County Commissioners to pay the sheriff his actual expenses when they are properly justified by receipts or other proof of payment. The formula for such payment is quite simple and is specifically set out in Section 180.43(c). Your second question involves a determination of whether the vendors who sell food to the sheriff for the feeding of prisoners should file claims with the sheriff or whether the sheriff should pay the vendor and then file claim for reimbursement with the Board of County Commissioners. Title 19 O.S. 410.8 [19-410.8] (1971) provides: "No account shall be allowed to the Board of County Commissioners unless the same is itemized in detail on the face of the claim, showing dates and unit rates, and the nature or description of each item stated, with signed receipts attached, if reimbursement is claimed for money expended, and if the claim is for services rendered in an employer-employee relationship and no specific fees or remuneration is specified by law, the dates and time actually and necessarily devoted to the performance of any service charge shall be specified. . ." The above section by its very language contemplates payments by the sheriff to the vendors for items used in boarding prisoners and subsequent reimbursement by the Board of County Commissioners. As aforesaid, in answer to your question (1), the sheriff must support his claim with itemized statements complete with signed receipts attached and a description of each item and his claim must be accompanied by the approval of the district attorney. Your third question refers to Senate Bill 551 of the Second Regular Session of the Thirty-fourth Oklahoma Legislature which is codified as 19 O.S. 180.43 [19-180.43] (1974), and alludes to the fact that many sheriffs had at the time of the passage of the legislation an inventory of food on hand. The question of whether the county may lawfully pay the sheriff for such food may be answered by a careful reading of Section 19 O.S. 180.43 [19-180.43](c). Under this provision, the sheriff is to be reimbursed on a per diem basis with reference to the number of prisoners in confinement. By including such a provision, the Legislature clearly intended to provide a method whereby reimbursement could be properly and adequately measured as the needs of the prisoners arise. A valid claim for the food and supplies on hand as of the effective date of the legislation could only be submitted as the food and supplies are used in the feeding of prisoners in the jail and according to the formula provided by statute. To conclude otherwise would be inconsistent with the clear meaning of the law. In your question (4), you have asked, in effect, whether the expense involved in paying cooks and assistants hired to prepare food for prisoners at county jails should be included within the meaning of the words "keeping, feeding and maintaining prisoners", or would said employees be paid in the same manner as other employees of the sheriff. As was emphasized in the answer to question (1), the determination ultimately depends on whether the expenses in question may be properly included within the meaning of the phrase, "keeping, feeding and maintaining prisoners." In light of the previous opinions of the Attorney General cited supra, wherein the Attorney General specifically held that such items as "medical bills and supplies, bedding, blankets, sheets, laundry, and like expenses incident to the in carceration of county prisoners" did not fall within the meaning of the phrase "keeping, feeding and maintaining prisoners", it must be concluded that salary expense for cooks and assistants hired for the preparation of food for prisoners is not a proper item of expense for boarding prisoners. Cooks and assistants hired for the purpose of preparing and serving meals to prisoners should be compensated as are other employees of the office of the sheriff. Your question (5) inquires into whether the sheriff or any of his employees could be fed in the jail with the groceries paid for from county funds. It is clear from a reading of 19 O.S. 180.43 [19-180.43](c) (1974) that the Legislature did not intend that the expense of the feeding of the sheriff and his employees be reimbursed by the county. The statute was intended to reimburse the sheriff for his actual expenses in the feeding of prisoners and not in the feeding of either himself or his employees. Question (6) requests an opinion concerning a holding by the Oklahoma Supreme Court in the case of Board of County Commissioners, Tulsa County v. Mars, Sheriff, 189 Okl. 339, 117 P.2d 129; wherein the following language appears: "Under the provisions of Section 3319-3322 O.S. 1931 the sheriff, in keeping and caring for prisoners of the United States, committed to the county jail, is not acting as sheriff, but jailer for the United States, and the county has no interest in money in the hands of said sheriff representing profits derived from the feeding of said federal prisoners." Your question specifically deals with the effect of Title 19 O.S. 180.43 [19-180.43](c) (1974) on the above-cited language. There is no question but that the Attorney General is bound by the decisions of the Supreme Court of the State. However, the 1974 amendments change the law somewhat and the rule enunciated in the Mars case is no longer wholly applicable. The statutory language as it now exists, contemplates that the sheriff shall realize no profit in the keeping, feeding and maintaining of prisoners. It is evident that the Legislature intended only that the sheriff be reimbursed for the " actual expenses" incurred in the boarding of prisoners. The Legislature has set a ceiling of $2.50 per day per prisoner confined for the first twenty (20) prisoners and $1.50 for each prisoner above twenty (20) and those maximum amounts may not be exceeded. As to federal prisoners in the custody of the county sheriff, Title 57 O.S. 16 [57-16], 57 O.S. 16A [57-16A] and 57 O.S. 17 [57-17] are controlling. Section 57 O.S. 17 [57-17] provides: "The United States shall be liable to pay for the support and keeping of said prisoners (federal prisoners), the same charges and allowances as are allowed for the support and keeping of prisoners committed under the authority of this State. (Parenthetical information supplied)." It must be concluded in view of the answer to your question (1), that the Legislature intended to remove the opportunity for a county sheriff to realize a profit out of the feeding of prisoners confined in the county jails of this State. So to some extent, that legislative intent abrogates the language of the Mars case, supra, relating to profits realized by the sheriff. However, although it appears from the provisions of 57 O.S. 17 [57-17] (1971) that the same formula should be used by the United States in computing what should be paid the sheriff for the keeping of federal prisoners, it is clear that the county has no interest whatsoever in the transaction between the sheriff and the federal government. To that extent, the Mars case remains viable. Your seventh question relates to Title 57 O.S. 4 [57-4] (1971) which provides: "The keeper of such prison shall see that the same is constantly kept in clean and healthful condition, and shall see that strict attention is constantly paid to personal cleanliness of all the prisoners in its custody, as far as may be, and shall cause the shirt of each prisoner to be washed at least once in each week; each prisoner shall be furnished daily with as much clean water as he shall have occasion for, either for drink or for the purpose of personal cleanliness, and with a clean towel once a week, and shall be served three times a day with wholesome food, which shall be well cooked and in sufficient quantity." (Emphasis added.) The duty of the sheriffs of the counties of this State to follow this requirement of the law is without question. On May 15, 1953, this office issued an opinion to the Honorable Buck Cook, Commissioner of the Department of Charities and Corrections, specifically construing Section 4 so as to require the person in charge of a city jail to serve each prisoner in said jail "three times each day with wholesome food, which shall be well cooked and in sufficient quantity." The statute in question applies as well to the county sheriff and his jailers and deputies, and any complaint relating thereto should be transmitted directly to the Commissioner of Charities and Corrections of the State of Oklahoma. Your question (8) is basically in the response to your question number (1). It is necessary for the sheriff to support his claim for reimbursement with receipts along with itemized statement concerning supplies purchased. Question No. 9 asks whether the amounts "allowable" the county sheriff in boarding prisoners may be accumulated from one month to another. This question must be answered in the negative. The sheriff is entitled to be reimbursed his actual expenses for the keeping, feeding and maintaining of prisoners on a per prisoner per day basis only. The words "amount allowable" refers to the language of the statute which provides for $2.50 per day for the first twenty (20) prisoners in confinement and $1.50 per day for each prisoner above twenty in number. Under this formula, it would be impossible for sums to accumulate. The sheriff is entitled to the maximum of $2.50 per day per prisoner for the first twenty prisoners and $1.50 per day per prisoner above twenty only if his receipts and other proof of expenditure show him entitled thereto. He is not entitled to the maximum sums allowable without such justification and proof. Therefore, your question must be answered in the negative. In light of the answer to Question No. 9, it is not necessary to answer Question No. 10. It is, therefore, the opinion of the Attorney General that your questions must be answered as follows: As to your first question, if an item claimed by the sheriff comes within the clear meaning of the words "keeping, feeding and maintaining prisoners", or is an item which has been traditionally included within the meaning of that language, it is incumbent upon the Board of County Commissioners to pay the sheriff his actual expenses when they are properly justified by receipts and other proof of payment and accompanied by the approval of the district attorney. The formula for such payment is specifically set out in Title 19 O.S. 180.4 [19-180.4](c) (1974). As to your second question, the language of 19 O.S. 410.8 [19-410.8] (1971) contemplates a payment by the sheriff to vendors for items used in boarding prisoners and subsequent reimbursement by the Board of County Commissioners upon submission of a proper claim accompanied by the approval of the district attorney. Your third question must be answered in the negative. The county may not pay a sheriff for food on hand on the effective date of 19 O.S. 180.43 [19-180.43](c) (1974). A valid claim for the food and supplies on hand as of the effective date of the Act could only be submitted as the food and supplies are used in the feeding of prisoners in the jail and according to the formula provided by statute. As to your Question No. 4, it is the opinion of the Attorney General that the salary expense for cooks and assistants hired for the preparation of food for prisoners in county jails is not an item includable within the meaning of the words "keeping, feeding and maintaining prisoners. " Cooks and assistants hired for the purpose of preparing and serving meals to prisoners should be compensated as are other employees of the office of the sheriff. Your Question No. 5 must be answered in the negative. The Legislature did not intend that the expense of the feeding of the sheriff and his employees be reimbursed by the county. The statute was intended to reimburse the sheriff for his actual expenses in the feeding of prisoners and does not include the expense of feeding the sheriff or his employees. As to Question No. 6, it is the opinion of the Attorney General that it was the intent of the Legislature in enacting 19 O.S. 180.43 [19-180.43](c) (1974) to remove the opportunity for a county sheriff to realize a profit out of the feeding of prisoners confined in the county jails of this state. To that extent, the legislative intent abrogates the language of Board of County Commissioners, Tulsa County v. Mars, Sheriff, cited supra, relating to profits realized by the sheriff. However, it is clear that the county has no interest whatsoever in the transaction between the sheriff and the federal government as to the reimbursement by the United States for the keeping of federal prisoners. To that extent, the Mars case, supra, remains viable. Your Question No. 7 must be answered in the affirmative. It is the duty of the county sheriffs of this State to follow the provisions of Title 57 O.S. 4 [57-4] (1971) and to serve each prisoner in the county jail "three times each day with wholesome food, which shall be well cooked and in sufficient quantity." Your Question No. 8 is answered in response to your Question No. 1. Question No. 9 must be answered in the negative. The sheriff is entitled to be reimbursed his actual expenses for keeping, feeding and maintaining of prisoners on per prisoner per day basis only and it is impossible for the "amount allowable" to accumulate. The negative answer given to your Question No. 9 makes it unnecessary to answer Question No. 10. (Michael Cauthron)